(No. 32238.—

The People of the State of Illinois *et al.,* Appellants,
*vs.* Roth, Incorporated, *et al.,* Appellees.

*Opinion filed May 22, 1952—Rehearing denied September 15, 1952.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and JOHN T. COBURN, of counsel,) for appellants.

LEONARD H. LAWRENCE, (ALBERT E. JENNER, JR., and CHARLES J. O'LAUGHLIN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This suit was instituted in the circuit court of Cook County by the People of the State of Illinois, as plaintiff, against seven defendants, proprietors of establishments variously referred to as night clubs and theater restaurants. Upon motion, Benjamin O. Cooper, Auditor of Public Accounts of the State of Illinois, was joined as plaintiff. Plaintiffs filed a motion to strike the answer of defendants and for judgment on the pleadings, and upon denial of the motion by the trial court plaintiffs elected to stand upon their motion and perfected their appeal directly to this court, the public revenue being involved.

The case at bar is a sequel to the decision of this court in two consolidated cases entitled "Byron Massell et al., Appellees, v. Richard J. Daley, Director of Revenue, et al., Appellants," and "Roth, Inc., et al., Appellees, v. Richard

J. Daley, Director of Revenue, et al., Appellants," and cited as *Massell* v. *Daley*, 404 Ill. 479.

Practically all the proceedings in these cases, hereinafter referred to as the consolidated cases, including the above opinion, are set out *in haec verba* in the pleadings in this suit. It appears therefrom that the defendants in this cause joined as plaintiffs in suits in equity under section 2a of an act which relates to the disposition of State funds paid under protest, (Ill. Rev. Stat. 1949, chap. 127, par. 172,) against certain State officials to restrain the collection of retailers' occupation taxes. The suits alleged that the plaintiffs were operating establishments which furnished entertainment and also dispensed food, beverages and liquors to their patrons. They there contended that they were engaged primarily in 'the business of furnishing entertainment and that services, in the form of entertainment, constituted 40 per cent of the total gross receipts realized from the sale of both such services and tangible personal property for consumption by their customers. Those suits were commenced in 1941 and a temporary injunction was entered enjoining certain State officials from paying or depositing into the State Treasury money paid by plaintiffs under protest. The money so paid in 1941 and from thence until December, 1948, amounted to 40 per cent of the "sales tax" upon the gross receipts of the plaintiffs. The funds thus accumulated by December 21, 1948, amounted to $91,912.97. In 1948 the plaintiffs amended their complaint, abandoning the right to apportionment between sales of tangible personal property and entertainment, and contending that their business was primarily that of furnishing entertainment, that the sale of food and drink was only incidental to their business, and that the whole of the business was nontaxable. The Attorney General filed a motion to dismiss the complaint as amended, which was overruled, and a decree was entered holding that the plaintiffs in that suit were not liable for said retailers' occupa-

tion tax by their operation of their several places of business. The then Attorney General raised no objections to the decree. On December 21, 1948, the trial court entered an order directing the then State Treasurer to return to the plaintiffs sums aggregating the above amount. This order was consented to by the then Attorney General through one of his assistants. Following the entry of such decree and order, warrants were drawn on the protest fund, payable to the several plaintiffs in the aggregate sum of $91,912.97. The succeeding State officers perfected an appeal from that decree. Upon that appeal, this court, in its opinion in the consolidated cases, found that the decree was invalid and it was reversed. *Massell* v. *Daley*, 404 Ill. 479.

The plaintiff State, defendant in the consolidated cases, seeks judgment against the defendants, jointly and severally, in the amount of $91,912.97 in this action at law sounding in trespass on the case and trover. They allege that the defendants illegally procured and converted to their own use unlawfully issued State warrants and their proceeds, by joint consent to unlawful action, with the co-operation of former State officers, and by the pretended authority of the decree in the consolidated cases.

Two contentions of the defendants in the case at bar regarding the meaning of the language appearing in the *Massell* v. *Daley* opinion may be readily eliminated. First: when we held that the decree was "invalid," we held in clear and unmistakable language that the decree was void. If this court had meant "erroneous," as contended by the defendants, we would have so stated. There could be no plainer language than to say that the decree was entered by consent and did not constitute a judicial determination of the rights of the parties. If the purported decree did not constitute a judicial determination, then, obviously, it was not merely erroneous but was actually void. We pointed out in that case that the constitution prohibited the General Assembly from releasing an obligation due to

the State, (sec. 23, art. IV,) and that if the General Assembly could not release such obligations an administrative officer could not do so. (*People ex rel. Ames* v. *Marx,* 370 Ill. 264.) There seems no room for doubt that at the time the consent decree was entered releasing the taxpayers from all liability, at least a part of the amount involved was a valid obligation due the State. It will be presumed that both the taxpayers and the State officials knew that the officials had no authority to agree to a consent decree releasing the obligation due the State, and, under such circumstances, fraud is presumed, and such a decree is void *ab initio.* (*Green* v. *Hutsonville Township High School Dist.* 356 Ill. 216.) Second: the contention that the opinion in *Massell* v. *Daley* was authority for the proposition that the defendant taxpayers were liable only for a tax measured by their receipts from the sale of food and beverages and need not pay a tax measured by their receipts for entertainment is without merit. That issue was not before the court and could not have been before the court upon the pleadings. We there specifically stated, page 486: "The question of the right to recover the amounts provided in said decrees is not before the court and we express no opinion thereon."

The defendants contend that plaintiffs have no title to any of the tax-protest fund but that title to such fund was at all times in defendants and, consequently, an action in the nature of trover cannot lie. Apparently, this is based on the theory that the decree in the consolidated cases had not been reversed at the time the defendants received and cashed the warrants. This contention ignores the well-established rule that a void decree has no legal effect, and attempts to controvert the doctrine that where property has been delivered to a neutral depositary upon a condition that, if not fulfilled, it should be paid over to a third party, then the third party becomes entitled to it as of the time of the original deposit. (*Clodfelter* v. *Van Fossan,*

394 Ill. 29.) The protest fund remained in the hands of the State Treasurer and not in the general funds of the State, but when the decree in the consolidated cases was found to be void, the funds belonged in the general fund of the State and the State became entitled to them as of the time of the original deposits. Such a deposit only fails to become the property of the State when the taxpayer obtains a favorable adjudication in a protest injunction suit. The statute specifically requires that the money in the protest fund shall be held in the protest fund until "the final order or decree of the court," whereupon it shall be returned to the protesting taxpayer if that order is in his favor. In the case at bar, not only was the order permitting the taxpayers to recover not final, it was not a court order at all. It was not a judicial determination. There can be no doubt that the State had and retained a special title in the protested amount from the time of its deposit until it acquired full title by court order, or its special title was divested by a final, valid order in the protesting taxpayers' favor. This special title which the State is bound to retain permits this action of trover. Undoubtedly, it was the intention of the General Assembly that deposits paid under protest should, if taxpayers failed to recover their deposit legally, have the effect of taxes paid at the time of the deposits. It was the purpose of the act to give the taxpayer the benefit of credit for payment of his taxes as of the time of the deposit, if it should ultimately be decided that he owed the tax.

The defendants attempt to make a distinction between an action for the conversion of the warrants themselves and an action for the conversion of the proceeds of the warrants. While this is not strictly an action of trover, it is an action in the nature of trover, and we have held that trover will lie against one who has unlawfully obtained negotiable instruments and received the proceeds thereof. (*Rauch* v. *Fort Dearborn Nat. Bank,* 223 Ill. 507.) Tech-

nically, this can be considered a conversion of the specific personal property, or it can be looked on as two successive conversions, the first being the conversion of the instrument, the second the conversion of the proceeds to the use of the wrongdoer. We are of the opinion that the complaint is broad enough to support an action either for the conversion of the warrants or of the proceeds. The facts are not in doubt as to the receiving of the several amounts by the respective defendants by the obtaining of the warrants and the taking and retaining of the proceeds.

The defendants allege that this is an action for the recovery and collection of "sales tax," and must fail because the statutory scheme, which is exclusive, was not followed. In view of our discussion above, it should be unnecessary to reiterate that this is a common-law action in the nature of trover to recover the proceeds of State warrants illegally acquired by the defendants. The reversal of the invalid consent decree did not determine the plaintiffs' claims for refund; an injunction operative from 1941 to 1948 precluded State action during that period; and the statutory period within which redetermination of taxes can be made has lapsed. The defendants' actions, under the spurious cloak of legality afforded them by the void decree, have denied the State all remedies save this one at common law. The action is not, and could not be, an action for the recovery or collection of "sales tax." It is an action to recover the value of property wrongfully converted to the defendants' use.

The only remaining question is whether the judgment should be entered jointly or severally. The plaintiffs contend that by joining with other defendants in the consolidated suits, their retention of one attorney and the co-operation of the defendants in a course of conduct that resulted in the illegal disbursement of said funds, made the defendants jointly liable. We fail to see that there is here such a joint liability. No conspiracy is shown to

make the defendants joint tort-feasors; there would appear to be no illegal intent which would make all responsible for the acts of one. It is true that the litigants in the consolidated cases proceeded in two separate actions to prosecute their claims. This they had a right to do, and they had a right to employ the same counsel if they saw fit. Each defendant was acting on his own behalf for the amount which each, respectively, claimed. The money was refunded by separate warrants, each such payment being separate and distinct. We conclude that there is no joint liability, but that the defendants are severally liable to plaintiffs for the amounts, respectively, illegally collected by them from the State.

The decree of the circuit court is reversed and the cause remanded, with directions to enter separate judgments against the defendants for the several sums set forth in the alternate prayer of plaintiffs' complaint.

*Reversed and remanded, with directions.*