(No. 66773.—

*In re* SPECIAL EDUCATION OF STEVEN WALKER
(Steven Walker *et al.*, Appellees, v. Joseph Cronin,
Appellant).

*Opinion filed October 25, 1989.*

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant.

James A. Wrigley and Matthew D. Cohen, of Skokie (Law Offices of Matthew Cohen, of counsel), for appellees.

Kenneth J. Sophie, Jr., of Law Offices of Gerard A. Facchini, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Steven Walker, a minor, by his mother, brought suit against the defendant, Joseph Cronin, the Director of the Board of Education (the Director), in the circuit court of Cook County after he was denied placement in a special education program. The circuit court found that the Board improperly denied Steven placement and awarded money damages for future costs of attendance at a residential school and to reimburse Steven's mother for the past costs of his attendance at the school. The appellate court affirmed. (107 Ill. App. 3d 1053.) The money portion of the judgment was not promptly paid and the plaintiff sought post-judgment in-

terest under section 2—1303 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1303). The circuit court awarded the Walkers interest on the judgment and the appellate court affirmed the award, but modified the amount. (165 Ill. App. 3d 846.) This court granted the defendant's petition for leave to appeal (107 Ill. 2d R. 315).

Upon the Walkers' suit for expenses, the circuit court set aside the Board of Education's denial of the Walkers' request to place Steven in a residential special educational program facility pursuant to article VIII, section 8.01, of the rules and regulations which govern the administration and operation of special education (23 Ill. Adm. Code §226.410 (1985)).

Finding that public schools could not adequately meet Steven's educational needs and that Steven was, therefore, wrongfully denied placement (see Ill. Rev. Stat. 1979, ch. 122, par. 14—8.02), the circuit court awarded the Walkers $39,334.49 as reimbursement for tuition and other expenses at the residential school between November 9, 1978, and April 22, 1981. Several months after the Walkers had submitted a verification of the school expenses, they remained unpaid. The Walkers then filed a motion to direct the State to make payment and sought an order granting interest on the judgment pursuant to section 2—1303. The Walkers were awarded statutory interest of 6% on the judgment for a total amount of $5,310. The appellate court, with one justice dissenting, held that section 2—1303 allows for the imposition of post-judgment interest against the State and affirmed the award, modifying it to reflect a different date upon which interest began to accrue.

The Director of the Board of Education on this appeal argues that the appellate court erroneously construed section 2—1303 as authorizing the imposition of

post-judgment interest against the State. The section provides:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, or any other governmental entity." Ill. Rev. Stat. 1983, ch. 110, par. 2—1303.

Our constitution provides for the abolition of sovereign immunity in article XIII, section 4. It states: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) The General Assembly has, however, restored immunity to the State. (Ill. Rev. Stat. 1981, ch. 127, par. 801.) Although the State has immunity, the legislature may, by statute, consent to liability of the State. The State's consent must be, however, "clear and unequivocal." *Martin v. Giordano* (1983), 115 Ill. App. 3d 367, 369 (citing *Department of Revenue v. Appellate Court* (1977), 67 Ill. 2d 392, and *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571).

The Director argues that the appellate court erred in judging that the language "any other governmental entity" in section 2—1303 was intended by the legislature as a waiver of the State's immunity so as to allow the imposition of post-judgment interest against the State. The Director contends that section 2—1303 does not contain the necessary authorization for such a waiver, because it does not specifically and in express language refer to the State of Illinois in authorizing the imposition of interest against judgment debtors.

The Walkers argue, and the appellate court held, that the language "or any other governmental entity" clearly indicates the legislature's intent to include the State within the statute's scope and is sufficient to waive the

State's immunity because it contains no restriction as to the type or level of governmental entity embraced by the statutory language.

Thus, the issue is whether section 2—1303's inclusion of the term "any other governmental entity" is a sufficiently clear reference to the State as to constitute a waiver of the State's immunity and thereby authorize the imposition of post-judgment interest against the State. We hold that the concerned language in section 2—1303 is not a sufficiently clear expression by the legislature to constitute a waiver of the State's immunity.

Our court has held that the State's waiver of immunity must be expressed through specific legislative authorization and must appear in affirmative statutory language. (*Department of Revenue v. Appellate Court*, 67 Ill. 2d at 396.) Statutes which in general terms authorize the imposition of costs in various actions or proceedings, but which do not in express terms refer to the State, are not adequate to authorize the imposition of costs against the State. *City of Springfield v. Allphin*, 82 Ill. 2d at 578. See also *Department of Revenue v. Appellate Court*, 67 Ill. 2d at 396 (where this court stated that unless there was specific reference to the State, a statute is insufficient to permit the State to be held liable for costs).

In addition to this court's requirement that the State's consent to waiver of its immunity be explicit, this court has observed that interest statutes, like statutes authorizing costs, are in derogation of the common law and are to be strictly construed. Nothing will be read into such statutes by intendment or implication. (*Allphin*, 82 Ill. 2d at 577. See also *Johnson v. Human Rights Comm'n* (1988), 173 Ill. App. 3d 564, 568; *La Salle National Bank v. City of Chicago* (1987), 154 Ill. App. 3d 456, 467; *Carswell v. Rosewell* (1986), 150 Ill. App. 3d 168, 172.) In order for the State to be liable for interest under section 2—1303, therefore, the State's

consent to the imposition of costs or interest against it must appear in clear and affirmative statutory language.

There have been several decisions in our State regarding the claimed waiver of the State's immunity. Where statutes have been found insufficient to permit a holding that immunity was waived, the statutory language provided for liability only in general terms, such as "any person" or "any party." Courts refused to find the State liable because the legislature did not clearly express its intent to waive the State's immunity by affirmative legislative action. See, *e.g.*, *Department of Revenue v. Appellate Court*, 67 Ill. 2d at 398 (where this court held that the State was not liable for costs, because the statute's general reference making "any person" liable for such recovery did not explicitly make reference to the State and therefore was inadequate to waive sovereign immunity). See also *Kozak v. Retirement Board* (1984), 128 Ill. App. 3d 678, 681 (where the court noted that a statute providing that "creditors" could receive 5% interest on money due from their debtors in certain circumstances was not specific enough to authorize the assessment of interest against a municipality, because municipalities were not specifically referred to in the statute).

In cases where the court has found a waiver of the State's immunity, the State's consent has been "clear and unequivocal." For example, in *Martin v. Giordano* (1983), 115 Ill. App. 3d 367, 369, the State was found liable for an additional payment of 50% for vexatious and unreasonable delay under sections of the Workers' Compensation Act. The court held the State liable for such payments because it judged that the State had expressly waived its immunity in a preceding section of the Act. The court pointed to the section as a clear indication of the legislature's intent. It provided, "The State of Illinois hereby elects to provide and pay compensation ac-

cording to the provisions of [the] Act." (Ill. Rev. Stat. 1981, ch. 48, par. 138.2.) Also, in *City of Springfield v. Allphin*, 82 Ill. 2d at 578, the court noted that when the legislature intends to impose liability on the State for interest, it will affirmatively declare that the burden will fall on the sovereign. Although the court in *Allphin* judged that the State was not liable for interest under a predecessor of section 2—1303 (the previous version of the statute provided for the imposition of interest against local governmental entities but did not include the language "any other governmental entity"), this court cited section 3 of "An Act to require prompt payments by the State of Illinois for goods or services" (Ill. Rev. Stat. 1977, ch. 127, par. 132.403) as an example of an act which sufficiently manifested the legislature's intent to waive sovereign immunity. The cited statute provides for 1% interest on bills unpaid by the State. Section 1 of that act provides that "[t]his Act applies to any State official or agency authorized to provide for payment from State funds, by virtue of any appropriation of the General Assembly, for goods or services furnished to the State." (Ill. Rev. Stat. 1977, ch. 127, par. 132.401.) Also, in *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 31, the court held that the act concerned provided "clear statutory authority for reimbursement of fees and costs to [court appointed attorneys] by the state." The court cited section 14 of that act (Ill. Rev. Stat. 1965, ch. 108, par. 118), which provided that fees and costs arising from the prosecution of convicts for crimes committed within the penitentiary system shall be paid by the State.

The defendant also cites other examples of statutes in which the waiver of sovereign immunity is affirmatively declared. For example, in the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*), section 25 of that Act provides, "For purposes of this

Act, the State of Illinois waives sovereign immunity." Also, the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*), in section 19, contains an identical explicit waiver.

Our courts have indicated in numerous decisions that an explicit indication of intent to waive the State's immunity is required. Using these decisions as a guide, we conclude that the inclusion of the term "any other governmental entity" is not such an explicit indication. We disagree with the decision in *Preston v. Thompson* (N.D. Ill. 1983), 565 F. Supp. 294. There the plaintiffs sought interest under section 2—1303 on judgments against the Illinois Department of Corrections (through its officers). The court concluded that "the *** statute's reference to 'any other governmental entity' is a sufficiently clear reference to subject the state to liability for interest on judgments against it." *Preston*, 565 F. Supp. at 301.

It is reasonable to assume that in enacting section 2—1303 the legislature acted with knowledge that explicit waiver of sovereign immunity was required to impose liability on the State. Had the legislature intended to impose liability upon the State, it would have followed its pattern of using explicit language of waiver and it would have expressly referred to the State.

For the reasons given, the judgment of the appellate court is reversed; and the order of the circuit court, awarding plaintiff post-judgment interest, is vacated.

*Appellate court judgment reversed;*
*circuit court order vacated.*

JUSTICE CALVO took no part in the consideration or decision of this case.