# Illinois Official Reports

## Supreme Court

***Parmar v. Madigan*, 2018 IL 122265**

| | |
|---|---|
| Caption in Supreme Court: | PAMINDER S. PARMAR, Appellee, v. LISA MADIGAN, Attorney General, *et al.*, Appellants. |
| Docket No. | 122265 |
| Filed | May 24, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of Chicago, of counsel), for appellants. |
| | Eric H. Jostock and Nicholas P. Hoeft, both of Chicago, for appellee. |
| | William D. Heinz, Richard P. Steinken, and Clifford W. Berlow, of Jenner & Block LLP, of Chicago, for *amicus curiae* Board of Trustees of the University of Illinois. |

Justices
JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Paminder S. Parmar, individually and as executor of the estate of Surinder K. Parmar, filed a complaint in the circuit court of Du Page County against defendants, the Attorney General and the Treasurer of the State of Illinois, challenging the application and constitutionality of an amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act) (35 ILCS 405/1 *et seq.* (West 2014)) and seeking a refund of all moneys paid to the Treasurer pursuant to the Estate Tax Act. The circuit court dismissed the complaint for lack of jurisdiction, pursuant to the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2014)). The appellate court reversed and remanded for further proceedings. 2017 IL App (2d) 160286.

¶ 2 We now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3 BACKGROUND

¶ 4 On January 9, 2011, Dr. Surinder Parmar, a resident of Du Page County, died, leaving an estate valued at more than $5 million. Her son, plaintiff here, was appointed executor of the estate. At the time of Dr. Parmar's death, the estate was not subject to taxation under the Estate Tax Act. Two days after Dr. Parmar's death, however, the General Assembly adopted a bill that revived the tax for the estates of persons who, like Dr. Parmar, died after December 31, 2010. On January 13, 2011, the Governor signed the bill, and the new law went into effect immediately. See Pub. Act 96-1496 (eff. Jan. 13, 2011).

¶ 5 In September 2012, plaintiff paid $400,000 to the Illinois Treasurer toward the estate's tax liability. The following month, plaintiff filed the estate's Illinois estate tax return and paid an additional sum of almost $160,000 to the Treasurer for late filing and late payment penalties, as well as interest. In April 2013, plaintiff requested a waiver of penalties, which the Illinois Attorney General granted in September 2013.

¶ 6 In July 2015, after a downward adjustment in the estate's federal tax liability, plaintiff filed an amended Illinois estate tax return. The "Certificate of Discharge and Determination of Tax" issued by the Attorney General on July 24, 2015, states that the estate's tax liability, including interest and penalties, had been paid and that the certificate was evidence of the complete release of all estate property from lien imposed by the Estate Tax Act and the discharge from personal liability of the executor for the estate tax, penalties, and interest.

¶ 7 Shortly thereafter, plaintiff filed another amended return, based on his belief that the amendment to the Estate Tax Act did not apply to his mother's estate and no tax was due. The

disposition of this amended return is not evident in the record, but on October 1, 2015, plaintiff filed a complaint challenging the retroactivity and constitutionality of the Estate Tax Act.[1]

¶ 8    Plaintiff claimed that retroactive application of the statutory amendment to the estates of persons who, like his mother, died after December 31, 2010, but before January 13, 2011 (the effective date of the amendment), was contrary to section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)) and would violate the due process and takings clauses of the Illinois and United States Constitutions, as well as the *ex post facto* clause of the Illinois Constitution. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§ 2, 15, 16. Plaintiff also claimed that the amendment was enacted in violation of the three readings clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) and that the vote on the amendment was invalid because the General Assembly was given inaccurate information about the estate tax scheme. Plaintiff requested a declaration that the Estate Tax Act applies only to the estates of persons who died on or after the effective date of the amendment or that the Estate Tax Act is unconstitutional for the reasons identified in his complaint. Plaintiff expressly stated that he brought his declaratory judgment action to "recover his payments" made pursuant to the Estate Tax Act and requested a full refund of all moneys he paid to the Treasurer, along with interest and "loss of use." Finally, plaintiff sought certification of a class of all similarly situated persons damaged by application of the Estate Tax Act.

¶ 9    Defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). Defendants first argued that the complaint should be dismissed under section 2-619(a)(1) of the Code (*id.* § 2-619(a)(1)) because the circuit court lacked jurisdiction. Defendants maintained that, because the complaint seeks a money judgment against the State, it is barred under sovereign immunity principles embodied in the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2014)) and the complaint must be filed in the Illinois Court of Claims. Defendants also argued that the complaint should be dismissed under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)) because the voluntary payment doctrine bars recovery. Finally, defendants argued that certain counts of the complaint should be dismissed pursuant to section 2-615 of the Code (*id.* § 2-615) for failure to state a claim upon which relief may be granted.

¶ 10    In response, plaintiff argued that his suit was properly brought in the circuit court because section 15 of the Estate Tax Act (35 ILCS 405/15 (West 2014)) vests jurisdiction in the circuit court to hear all tax disputes arising under the Estate Tax Act. Plaintiff also argued that he was not seeking payment from the State because his claim is not against the General Revenue Fund. Rather, his claim is against the Estate Tax Refund Fund, a special fund created under section 13 of the Estate Tax Act (*id.* § 13(c)). Plaintiff further argued that his complaint was not barred by the voluntary payment doctrine because he made the tax payments under "implied duress" created by the threat of penalties imposed by the Estate Tax Act. Plaintiff also defended the sufficiency of his constitutional claims.

¶ 11    The circuit court agreed with defendants that it lacked jurisdiction and dismissed the complaint without prejudice to refile in the Illinois Court of Claims. The court expressly ruled that section 15 of the Estate Tax Act "is not an explicit waiver of sovereign immunity."

---

[1]In addition to the Attorney General and the Treasurer, plaintiff named as defendants Constance Beard, as Director of the Illinois Department of Revenue, and Bruce Rauner, as Governor. Plaintiff voluntarily dismissed Beard and Rauner, and they are not a part of this appeal.

¶ 12    The appellate court reversed and remanded for further proceedings. 2017 IL App (2d) 160286, ¶ 42. Relying principally on *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, the appellate court held that the officer suit exception to sovereign immunity applied and jurisdiction in the circuit court was proper. 2017 IL App (2d) 160286, ¶ 27. The appellate court also held that plaintiff's claims were not barred by the voluntary payment doctrine. *Id.* ¶ 40. The court agreed with plaintiff that the prospect of penalties, interest, and personal liability under the Estate Tax Act amounted to duress and, therefore, plaintiff's payment of taxes was not voluntary. *Id.* ¶ 35. Finally, the appellate court held that, because plaintiff paid the taxes involuntarily, he was not required to seek recovery under the State Officers and Employees Money Disposition Act (Protest Moneys Act) (30 ILCS 230/1 *et seq.* (West 2014)). 2017 IL App (2d) 160286, ¶ 40. Because the appellate court concluded that the circuit court erred in dismissing plaintiff's complaint on grounds of sovereign immunity, the appellate court did not consider whether the legislature waived immunity in section 15 of the Estate Tax Act (35 ILCS 405/15 (West 2014)). 2017 IL App (2d) 160286, ¶ 29.

¶ 13    We allowed defendants' petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)) and allowed the Board of Trustees of the University of Illinois to file an *amicus curiae* brief in support of defendants (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 14                                        ANALYSIS

¶ 15    Defendants urge this court to reverse the appellate court and affirm the circuit court's dismissal of plaintiff's complaint, arguing that the officer suit exception to sovereign immunity does not apply in this case. Defendants argue in the alternative that even if sovereign immunity does not apply in this case, dismissal of plaintiff's complaint was proper under the voluntary payment doctrine because the mere threat of statutory penalties for nonpayment of taxes does not constitute duress. Defendants further argue that plaintiff had a simple and complete statutory remedy under the Protest Moneys Act and plaintiff's failure to follow this statutory procedure bars his claim.

¶ 16    Plaintiff argues that the appellate court correctly concluded that this case presents a "textbook instance of the officer-suit exception" to sovereign immunity (2017 IL App (2d) 160286, ¶ 27) but that, even if the exception does not apply, the General Assembly waived sovereign immunity in section 15 of the Estate Tax Act (35 ILCS 405/15 (West 2014)). Plaintiff also argues that neither the Protest Moneys Act nor the voluntary payment doctrine bars his complaint where his payment of estate taxes was made under duress and without knowledge of the facts upon which to frame a protest.

¶ 17    Because questions related to the circuit court's subject-matter jurisdiction and the interpretation of a statute both present issues of law, our review proceeds *de novo*. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25; see also *Leetaru*, 2015 IL 117485, ¶ 41 (circuit court's grant of a motion to dismiss for lack of jurisdiction under section 2-619(a)(1) is reviewed *de novo*).

¶ 18                        *Sovereign Immunity and the Officer Suit Exception*

¶ 19    Under the Illinois Constitution of 1870, the State of Illinois enjoyed immunity from suits of any kind. See Ill. Const. 1870, art. IV, § 26 ("The state of Illinois shall never be made defendant in any court of law or equity."); see also *Coleman v. East Joliet Fire Protection*

*District*, 2016 IL 117952, ¶¶ 24-28 (discussing the origins and development of the sovereign immunity doctrine). With the adoption of the Illinois Constitution of 1970, however, sovereign immunity was abolished in this State "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. In accordance with this constitutional grant of authority, the General Assembly enacted the State Lawsuit Immunity Act, reinstituting the doctrine of sovereign immunity. See Pub. Act 77-1776 (eff. Jan. 1, 1972); *Leetaru*, 2015 IL 117485, ¶ 42. This statute provides:

> "Except as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, and Section 1.5 of this Act, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2014).

¶ 20    The Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2014)) creates a forum for actions against the State. *Healy v. Vaupel*, 133 Ill. 2d 295, 307 (1990). With some limited exceptions, the Illinois Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a) (West 2014).

¶ 21    In the present case, plaintiff filed suit against Lisa Madigan, as Attorney General of the State of Illinois, and Michael Frerichs, as Treasurer of the State of Illinois. The complaint states that each defendant is sued in his or her "official capacity only." A suit against a State official in his or her official capacity is a suit against the official's office and is therefore no different than a suit against the State. *Magna Trust Co. v. Department of Transportation*, 234 Ill. App. 3d 1068, 1070 (1992) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)); see also *Smith v. Jones*, 113 Ill. 2d 126, 131 (1986) (" 'official acts of State officers are in effect acts of the State itself' " (quoting *Sass v. Kramer*, 72 Ill. 2d 485, 492 (1978))); *Schwing v. Miles*, 367 Ill. 436, 441 (1937) (suit against a governmental agency is a suit against the State). Thus, the bar of sovereign immunity would seemingly apply in this case.

¶ 22    This court, however, has long held that the determination of whether an action is one against the State depends upon the issues involved and the relief sought and not simply the formal identification of the parties. *Leetaru*, 2015 IL 117485, ¶¶ 44-45; *People v. Phillip Morris, Inc.*, 198 Ill. 2d 87, 97 (2001); *Smith*, 113 Ill. 2d at 131; *Sass*, 72 Ill. 2d at 490-91. Where, for example, a plaintiff alleges that the State officer's conduct violates statutory or constitutional law or is in excess of his or her authority, such conduct is not regarded as the conduct of the State. The underlying principle is that conduct taken by a State officer without legal authority strips the officer of his or her official status. *Leetaru*, 2015 IL 117485, ¶¶ 45-46. Thus, a complaint seeking to prospectively enjoin such unlawful conduct may be brought in the circuit court without offending sovereign immunity principles. *Id.* ¶ 48; see also *Ellis v. Board of Governors of State Colleges & Universities*, 102 Ill. 2d 387, 395 (1984) (recognizing that if a plaintiff is not attempting to enforce a present claim, which has the potential to subject the State to liability, but instead "seeks to enjoin a State officer from taking future actions in excess of his delegated authority, then the immunity prohibition does not obtain"). This exception to sovereign immunity has been called the "prospective injunctive relief exception" (*Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751, 755 (1995)), but it is most often referred to as the "officer suit exception" (*PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 260 (2005)).

¶ 23    Here, the appellate court, on the basis of our decision in *Leetaru*, held that plaintiff's suit against the Attorney General and the Treasurer fell within the officer suit exception and, therefore, the circuit court had jurisdiction over plaintiff's complaint. We agree with defendants that the appellate court misconstrued *Leetaru* and the officer suit exception does not apply in this case.

¶ 24    In *Leetaru*, the plaintiff sued the Board of Trustees of the University of Illinois and one of the university's associate vice chancellors seeking to enjoin them from proceeding with their investigation into alleged misconduct by the plaintiff with respect to his research as a graduate student. The plaintiff did not question the right of the defendants to investigate research misconduct. Rather, the plaintiff alleged that the defendants' conduct failed to comply with the university's rules and regulations governing discipline of students. We rejected the defendants' argument that, under principles of sovereign immunity, exclusive jurisdiction over the plaintiff's complaint lay in the Illinois Court of Claims. *Leetaru*, 2015 IL 114785, ¶ 49. We explained: "Because sovereign immunity affords no protection when agents of the State have acted in violation of statutory or constitutional law or in excess of their authority, which is precisely what [the plaintiff] has alleged, Illinois precedent compels the conclusion that he was entitled to proceed in circuit court." *Id.* ¶ 50. We did not end our analysis there. We noted that the plaintiff did "not seek redress for some past wrong." *Id.* ¶ 51. The plaintiff sought "only to prohibit future conduct (proceeding with the disciplinary process) undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority. Claims of this type are not claims against the State at all and do not threaten the State's sovereign immunity." *Id.*

¶ 25    In contrast to the facts in *Leetaru*, plaintiff here does not allege that defendants acted in excess of their authority. The Estate Tax Act, on its face, is applicable to the estates of persons who, like Dr. Parmar, died after December 31, 2010. See 35 ILCS 405/2(b) (West 2014). And, as stated in the complaint, the Attorney General is responsible for administering and enforcing the Estate Tax Act, and the Treasurer is responsible for receiving and refunding moneys collected pursuant to the Estate Tax Act. See *id.* § 16(a) ("It is the duty of the Attorney General to exercise general supervision over the assessment and collection of the tax ***."); *id.* § 6(e)(3) (taxes "shall be paid directly to the State Treasurer"); *id.* § 13(c) ("Treasurer shall order payment of refunds resulting from overpayment of tax liability"). Plaintiff does not allege any conduct by defendants that was outside of or contrary to their authority under the Estate Tax Act.

¶ 26    Plaintiff does allege that defendants' conduct was unlawful because defendants acted pursuant to an unconstitutional statute. But unlike the plaintiff in *Leetaru* who sought to enjoin future conduct by the defendants that was contrary to law, plaintiff here seeks damages—a refund of all moneys paid under the Estate Tax Act, together with interest and loss of use—for a past wrong. *Leetaru* makes plain that a complaint seeking damages for a past wrong does not fall within the officer suit exception to sovereign immunity. *Leetaru*, 2015 IL 117485, ¶ 51.

¶ 27    The appellate court erred in holding that the officer suit exception to sovereign immunity applies in this case.

¶ 29    Plaintiff argues that his complaint may yet proceed in the circuit court because the General Assembly waived sovereign immunity in section 15 of the Estate Tax Act. Section 15 states, in relevant part:

> "(a) Jurisdiction. Jurisdiction to hear and determine all disputes in relation to a tax arising under this Act shall be in the circuit court for the county having venue as determined under subsection (b) of this Section, and the circuit court first acquiring jurisdiction shall retain jurisdiction to the exclusion of every other circuit court.
>
> (b) Venue.
>
> (1) Venue for disputes involving Illinois estate tax of a decedent who was a resident of Illinois at the time of death shall lie in the circuit court for the county in which the decedent resided at death." 35 ILCS 405/15 (West 2014).[2]

¶ 30    Plaintiff maintains that under the plain language of section 15, the circuit court possesses subject-matter jurisdiction over "all disputes" relating to a tax under the Estate Tax Act and, thus, the circuit court, and not the Illinois Court of Claims, has jurisdiction over his suit. Defendants counter that section 15 does not constitute a clear and unequivocal waiver of sovereign immunity and, therefore, does not aid plaintiff. We agree with defendants.

¶ 31    As already discussed, the General Assembly restored immunity to the State through the State Lawsuit Immunity Act. 745 ILCS 5/0.01 *et seq.* (West 2014). The State Lawsuit Immunity Act expressly states that except as provided in certain statutes identified therein—and the Estate Tax Act is not one of them—the "State of Illinois shall not be made a defendant or party in any court." *Id.* § 1. The General Assembly may, by statute, consent to liability of the State, but such consent must be clear and unequivocal. *In re Special Education of Walker*, 131 Ill. 2d 300, 303 (1989). The statute must explicitly indicate, in affirmative language, that the State waives sovereign immunity. *Id.* at 304. For example, the Illinois Educational Labor Relations Act, which is not one of the statutes referenced in the State Lawsuit Immunity Act, states in clear and unequivocal terms: "For purposes of this Act, the State of Illinois waives sovereign immunity." 115 ILCS 5/19 (West 2014).

¶ 32    In contrast, section 15 of the Estate Tax Act does not contain such a clear and unequivocal waiver of sovereign immunity. Although section 15 refers to "all disputes" relating to a tax arising under the Estate Tax Act, it does not reference the State or its immunity. Statutes that use only general terms without an expressed intent to subject the State to liability will not be construed to impair or negate the State's immunity from suit established in the State Lawsuit Immunity Act. *City of Springfield v. Allphin*, 82 Ill. 2d 571, 578 (1980).

¶ 33    The absence of affirmative language in section 15 waiving the State's immunity from suit leads us to conclude that the General Assembly only intended to fix jurisdiction and venue for all disputes that do *not* implicate sovereign immunity. Although we need not, for purposes of this appeal, identify all of the causes of action that would fall into that category, we observe that a complaint that seeks to prospectively enjoin some conduct of the State defendants (as discussed above) is one such suit, as is a complaint for a writ of *mandamus*, which seeks to

---

[2]Subsection (b)(2) addresses venue for resident trusts, and subsection (b)(3) addresses venue relating to decedents who were not residents of Illinois at the time of death and nonresident trusts. 35 ILCS 405/15(b)(2), (3) (West 2014).

compel a public official to perform some purely ministerial, nondiscretionary act. *People ex rel. Berlin v. Bakalis*, 2018 IL 122435, ¶ 16. As will be discussed below, a complaint pursuant to the Protest Moneys Act (30 ILCS 230/1 *et seq.* (West 2014)) could also be filed in the circuit court. The jurisdiction and venue provisions of section 15 would further apply to enforcement actions filed by the Attorney General. See 35 ILCS 405/10(d) (West 2014) ("Attorney General shall have the right to sue for collection of the Illinois transfer tax"); *id.* § 16(a) (Attorney General "may institute and prosecute suits and proceedings as may be necessary and proper"); *People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245 (where the Attorney General filed a complaint under the Estate Tax Act seeking additional tax, interest, and late filing penalties related to an adjustment in the estate's federal tax liability).

¶ 34 Limiting the jurisdiction and venue provision in section 15 of the Estate Tax Act to suits that do not implicate sovereign immunity gives meaning to that provision, while also harmonizing it with the provisions of the State Lawsuit Immunity Act. See *People v. Rinehart*, 2012 IL 111719, ¶ 26 (statutes concerning the same subject must be considered together to produce a harmonious whole).

¶ 35 For these reasons, we reject plaintiff's argument that the General Assembly waived sovereign immunity in section 15 of the Estate Tax Act.

¶ 36 *Estate Tax Refund Fund*

¶ 37 Plaintiff maintains that, even if section 15 of the Estate Tax Act does not constitute a waiver of sovereign immunity, a judgment in his favor would not result in a judgment against the State and, therefore, his complaint does not implicate sovereign immunity. Plaintiff posits that sovereign immunity is intended to prevent a judgment payable from public funds, *i.e.*, the State's General Revenue Fund, but a judgment in his favor would be payable from a special refund fund created under section 13(c) of the Estate Tax Act (35 ILCS 405/13(c) (West 2014)).

¶ 38 Defendants do not dispute that if a judgment could be satisfied by moneys in the refund fund, then plaintiff's complaint would not implicate principles of sovereign immunity. Rather, defendants contend that plaintiff's argument ignores other provisions of the Estate Tax Act governing the payment of refunds and that plaintiff does not fall within the class of taxpayers entitled to a refund pursuant to section 13(c).

¶ 39 Section 13(c) requires the Treasurer to deposit into the General Revenue Fund 94% of the taxes, interest, and penalties collected under the Estate Tax Act and to deposit the remaining 6% into the Estate Tax Refund Fund, a special fund created in the State treasury. *Id.* Section 13(c) further provides:

> "Moneys in the Estate Tax Refund Fund shall be expended exclusively for the purpose of paying refunds resulting from overpayment of tax liability under this Act, except that, whenever the State Treasurer determines that any such moneys in the Fund exceed the amount required for the purpose of paying refunds resulting from overpayment of tax liability under this Act, the State Treasurer may transfer any such excess amounts from the Estate Tax Refund Fund to the General Revenue Fund.
>
> The Treasurer shall order payment of refunds resulting from overpayment of tax liability under this Act from the Estate Tax Refund Fund only to the extent that amounts have been deposited and retained in the Fund.

This amendatory Act of the 97th General Assembly shall constitute an irrevocable and continuing appropriation from the Estate Tax Refund Fund for the purpose of paying refunds upon the order of the Treasurer in accordance with the provisions of this Act ***." *Id.*

¶ 40      Section 13(c) makes plain that moneys from the Estate Tax Refund Fund are paid on the order of the Treasurer for the exclusive purpose of paying "refunds" as provided in the Estate Tax Act. The subject of refunds, in turn, is addressed in section 7(b):

"If the state tax credit[3] is reduced after the filing of the Illinois transfer tax return, the person who paid the Illinois transfer tax *** shall file an amended Illinois transfer tax return and shall be entitled to a refund of tax or interest paid on the Illinois transfer tax.[4] No interest shall be paid on any amount refunded." *Id.* § 7(b).

¶ 41      Section 14 of the Estate Tax Act also addresses "claims for refund," providing that:

"In case it appears that the amount paid with respect to any taxable transfer is more than the amount due under this Act, then the State Treasurer shall refund the excess to the person entitled to the refund, provided that no amount shall be refunded unless application for the refund is filed with the State Treasurer no later than one year after the last date allowable under the Internal Revenue Code for filing a claim for refund of any part of the related federal transfer tax or, if later, within one year after the date of final determination of the related federal transfer tax." *Id.* § 14.

¶ 42      The foregoing provisions not only set out the procedures that must be followed for obtaining a refund but also limit the circumstances under which an application for refund with the Treasurer can be made. Plaintiff's claim for refund, filed in the circuit court, does not fit within this statutory framework.

¶ 43      Plaintiff's claim is not predicated on a reduction of the "state tax credit," as provided in section 7(b) of the Estate Tax Act. Nor is plaintiff's claim based on an overpayment of taxes with respect to a "taxable transfer," as provided in section 14. Indeed, plaintiff's claim is predicated on the notion that no taxable transfer occurred. According to plaintiff, the statute under which he paid the taxes should not apply to his mother's estate, and he wants the Treasurer to return all the moneys he paid, with interest. In other words, this is not a case where a downward adjustment to the estate's tax liability has occurred, requiring the filing of an amended return under section 7(b), and the subsequent filing of an application for refund with the Treasurer, pursuant to section 14. Thus, plaintiff's claim does not fall within the limited refund provisions of the Estate Tax Act. Accordingly, the moneys in the Estate Tax Refund Fund are not available to satisfy any money judgment in this case.

---

[3]For persons like Dr. Parmar, who died after December 31, 2010, "state tax credit" means "an amount equal to the full credit calculable under Section 2011 or 2604 of the Internal Revenue Code as the credit would have been computed and allowed under the Internal Revenue Code as in effect on December 31, 2001, without the reduction in the State Death Tax Credit as provided in Section 2011(b)(2) or the termination of the State Death Tax Credit as provided in Section 2011(f) as enacted by the Economic Growth and Tax Relief Reconciliation Act of 2001 but recognizing the exclusion amount of only (i) $2,000,000 for persons dying prior to January 1, 2014 ***." 35 ILCS 405/2(b) (West 2014).

[4]The "Illinois estate tax" is "the tax due to this State with respect to a taxable transfer." 35 ILCS 405/2 (West 2014).

¶ 44    We note that plaintiff conceded, at oral argument, that satisfaction of his claim for refund is not limited to the 6% of tax receipts that have been "deposited and retained in the [Estate Tax Refund] Fund," as section 13(c) provides. *Id.* § 13(c). Plaintiff seeks a full refund of all the moneys he paid to the Treasurer and indicated that he would look to another source, the General Revenue Fund, to satisfy any shortfall in the Estate Tax Refund Fund. Additionally, plaintiff expressly requested in his complaint interest and loss of use on the moneys he paid to the Treasurer. The Estate Tax Act, however, makes no provision for payment of "loss of use" on moneys refunded, and section 7 expressly prohibits the payment of interest on any amount refunded (*id.* § 7(b)).

¶ 45    The damages that plaintiff seeks go beyond the exclusive purpose and limits of the Estate Tax Refund Fund and potentially subject the State to liability. Accordingly, we reject plaintiff's argument that his complaint does not implicate principles of sovereign immunity.

¶ 46                              *Protest Moneys Act*

¶ 47    Plaintiff also argues that he has a constitutional right, pursuant to the due process clause of the Illinois Constitution, to have his claims considered by the circuit court. Plaintiff, however, cites no case law or other authority for the proposition that due process requires that his complaint proceed in the circuit court notwithstanding the bar of sovereign immunity. Plaintiff's lack of authority aside, we note our agreement with defendants that plaintiff could have litigated his claims in the circuit court had he followed the procedures for paying taxes under protest pursuant to the Protest Moneys Act (30 ILCS 230/1 *et seq.* (West 2014)).

¶ 48    The Protest Moneys Act requires various State officers, who are authorized to receive moneys for and on behalf of the State, to keep detailed books and records of all such moneys received and, unless otherwise provided by law, to deposit such moneys into the State treasury. *Id.* §§ 1, 2(a). Relevant here, the statute makes express provision for the "[p]ayment of money under protest." *Id.* § 2a.1. Where money is received under protest, the officer receiving the money must notify the Treasurer, who then places the money in a special fund known as the "protest fund." *Id.* § 2a. The person who has paid the money under protest has 30 days in which to obtain a temporary restraining order or a preliminary injunction restraining the transfer of the money into the State treasury or other fund into which the money would have been transferred absent the protest. If the restraining order issues, the money is held in the protest fund until the final order or judgment of the court. *Id.* If the taxpayer does not prevail, the money held in the protest fund becomes the property of the State. *People v. Roth, Inc.*, 412 Ill. 446, 451 (1952). The Protest Moneys Act "affords a complete and adequate remedy in a court of equity where all questions can be fully and speedily determined." *Montgomery Ward & Co. v. Stratton*, 342 Ill. 472, 477 (1930). Although a complaint filed in accordance with the Protest Moneys Act would name State officers and or agencies as defendants, the statutory remedy—determination of questions related to the "proper disposition of the moneys paid under protest" (30 ILCS 230/2a (West 2014))—would not constitute a claim against the State and would operate outside of the bar of sovereign immunity.

¶ 49    This statutory procedure has been utilized to challenge the retroactive application and constitutionality of an amendment to the Estate Tax Act (*McGinley v. Madigan*, 366 Ill. App. 3d 974 (2006)) and to challenge the construction of an amendment to the Estate Tax Act (*Brooker v. Madigan*, 388 Ill. App. 3d 410 (2009)). Plaintiff could have availed himself of this

statutory procedure and pursued his constitutional claims in the circuit court but failed to do so. Plaintiff cannot now complain that due process requires that his complaint proceed in the circuit court.

¶ 50 Plaintiff makes the related argument that the Illinois Court of Claims does not possess exclusive jurisdiction under the Court of Claims Act to rule on the constitutionality of a statute and jurisdiction must lie in the circuit court. Plaintiff's argument appears to be that unless his complaint is allowed to proceed in the circuit court, he will be without a remedy.

¶ 51 The Illinois Constitution provides that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs." Ill. Const. 1970, art. I, § 12. This provision, however, expresses an aspirational goal. It "does not mandate a certain remedy be provided in any specific form." *Schoeberlein v. Purdue University*, 129 Ill. 2d 372, 379 (1989). Limiting plaintiff's available remedies does not run afoul of this constitutional provision. *Id.*

¶ 52 For all of these reasons, we reject plaintiff's argument that his complaint must be allowed to proceed in the circuit court.

¶ 53 *Voluntary Payment Doctrine*

¶ 54 As a final matter, we turn our focus to the voluntary payment doctrine. The appellate court, after holding that plaintiff's suit fell within the officer suit exception to sovereign immunity, rejected defendants' alternative argument that dismissal of plaintiff's complaint was proper pursuant to the voluntary payment doctrine. 2017 IL App (2d) 160286, ¶¶ 32-40. Under this common-law doctrine, "a taxpayer may not recover taxes voluntarily paid, even if the taxing body assessed or imposed the taxes illegally" unless "such recovery is authorized by statute." *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393 (1989). Taxes are not voluntarily paid where (1) "the taxpayer lacked knowledge of the facts upon which to protest the taxes at the time they were paid" or (2) "the taxpayer paid the taxes under duress." *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 31 (2005) (discussing *Geary*).

¶ 55 With respect to the concept of "duress," this court has explained that:

"Illinois law does not require a showing that the taxpayer was actually threatened by anyone. Implied duress will suffice. *Geary*, 129 Ill. 2d at 402-03. Such duress exists where the taxpayer's refusal to pay the tax would result in loss of reasonable access to a good or service considered essential. *Geary*, 129 Ill. 2d at 396-400. Goods or services deemed to be necessities have included telephone and electrical service ***." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23-24 (2004).

¶ 56 The appellate court in the instant case took an expansive view of duress, agreeing with plaintiff that the prospect of penalties, interest, and personal liability under the Estate Tax Act amounted to duress, thus making plaintiff's payment of taxes involuntary. 2017 IL App (2d) 160286, ¶ 35. Defendants argue that the appellate court's view of duress is contrary to case law from this court and, if the voluntary payment doctrine can be avoided by pointing to a subjective fear of the mere possibility of incurring penalties and interest, then the doctrine is eroded to the point of irrelevance.

¶ 57 Resolution of any tension between the appellate court's view of duress and our case law, however, must wait for another day. "It is axiomatic that this court will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided." *Leetaru*, 2015 IL 117485, ¶ 56. Even if we

- 11 -

concluded, as the appellate court did, that plaintiff paid the taxes involuntarily, such conclusion would not allow plaintiff to avoid the jurisdictional bar of sovereign immunity. In other words, where sovereign immunity applies, as it does here, the manner in which plaintiff paid the taxes is irrelevant.

¶ 58                                            CONCLUSION

¶ 59     For the reasons set forth above, we reverse the judgment of the appellate court and affirm the judgment of the circuit court dismissing plaintiff's complaint for lack of jurisdiction.

¶ 60     Appellate court judgment reversed.

¶ 61     Circuit court judgment affirmed.