# Illinois Official Reports

## Appellate Court

---

### *Shempf v. Chaviano*, 2019 IL App (1st) 173146

---

| | |
|---|---|
| Appellate Court Caption | CHARLES SHEMPF, as a Member of the Midwest Region of the Laborers' International Union of North America, and GREAT PLAINS, SOUTHERN AND CENTRAL ILLINOIS, AND SOUTHWEST ILLINOIS LABORERS' DISTRICT COUNCILS, Plaintiffs-Appellants, v. HUGO CHAVIANO, Director of Labor, and THE DEPARTMENT OF LABOR, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-17-3146 |
| Filed<br>Modified upon<br>denial of rehearing | March 20, 2019<br><br>April 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 16-L-50642, 16-CH-12963, 16-CH-12966, 16-CH-13033; the Hon. Thomas Allen, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, and remanded with directions. |
| Counsel on Appeal | Ellen Schanzle-Haskins, of Springfield, for appellants.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees. |

JUSTICE ELLIS delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1        This case involves a dispute under the Prevailing Wage Act (820 ILCS 130/0.01 *et seq.* (West 2016)). After the Illinois Department of Labor (Department) failed to post prevailing wage rates for 2016 on its website, plaintiffs, Charles Shempf, in his capacity as a member of the Midwest Region of the Laborers' International Union of North America, and the Great Plains, Southern and Central Illinois, and Southwest Illinois Laborers' District Councils (collectively, Shempf), filed a two-count complaint against the Department and its director for administrative review and mandamus.

¶ 2        The circuit court issued the writ and directed the Department to post the 2016 prevailing wage rates by May 26, 2017. The Department complied with that order but with a catch: When it published the 2016 rates on its website, it stated that the new rates would not go into effect until June 5, 2017. Shempf's position was that the published rates should have retroactive effect, and thus, the Department's inclusion of a prospective effective date did not comply with the writ. So he filed a document styled as a "Request for Clarification or Rule to Show Cause."

¶ 3        The trial court denied the motion, believing that it lacked jurisdiction to consider Shempf's request, as the motion had been filed more than 30 days after entry of the writ of mandamus, which had been accompanied by language under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Later, the court dismissed Shempf's claim for administrative review, ruling that it lacked subject-matter jurisdiction and that, in any event, the claim had become moot once the Department posted the 2016 rates.

¶ 4        On appeal, Shempf argues that the circuit court had jurisdiction to consider his motion for clarification or rule to show cause, as the motion sought enforcement of the mandamus order, and because he still had the right to seek damages, attorney fees, and costs against the Department. Second, Shempf says the court erred by dismissing his administrative-review claim.

¶ 5        We view Shempf's motion for clarification or to issue a rule to show cause as both a request to modify and a request to enforce the mandamus order. The request to modify the writ was untimely, as it was a postjudgment motion directed against the judgment that was filed more than 30 days after entry of the mandamus order and its Rule 304(a) language. The request for damages and costs were properly denied under the doctrine of sovereign immunity, and the request for attorney fees was properly denied as lacking statutory authority. To that extent, we affirm the trial court's judgment denying the motion for clarification or rule to show cause.

¶ 6        But the request for a rule to show cause contained within that motion was proper and timely, as it was a request to *enforce* the mandamus order and was thus not governed by a 30-day clock. We vacate the trial court's judgment to that extent and remand for the limited purpose of allowing Shempf to present his motion for a rule to show cause.

¶ 7        We affirm the trial court's dismissal of the administrative-review claim, as the court properly determined that it lacked subject-matter jurisdiction to hear it. The action of the

Department about which Shempf complained was not a final administrative decision as contemplated by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)).

¶ 8                                                            BACKGROUND

¶ 9        The Prevailing Wage Act's purpose is to ensure that laborers employed by public bodies receive "[n]ot less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed." 820 ILCS 130/3 (West 2016). The intricacies and specifics of how this plays out are unnecessary to detail here, but what follows is a general overview of how the process typically works, and what happened in this case.

¶ 10       Each year, public bodies are required to ascertain the prevailing wage, post it, and submit it to the Department by July 15. See *id.* § 9. In the preceding month of June, the Department is required to determine the prevailing wage for each county, too. *Id.* Ultimately, the Prevailing Wage Act contemplates that the Department will publish the prevailing wage rates on its website. *Id.* According to Shempf, the Department traditionally posted its county-by-county prevailing wage rates by July 15 of each calendar year.[1]

¶ 11       But in 2016, the Department did not publish those rates on July 15. Instead, it posted this on July 15:

> "The 2015 prevailing wage rates are still in effect until the Department publishes the 2016 rates. The Department is in the process of determining 2016 rates and expects to have them published by late August. July 15 remains the statutory deadline for local governments to provide copies of their rates to the Department, but is not the deadline for the Department to publish its new rates."

¶ 12       The Prevailing Wage Act provides that, once the Department publishes the county-by-county prevailing wage rates on its website, individuals may object to those rates. *Id.* The Department must give objectors an administrative hearing at which both the objectors and the Department (or any relevant local public body) will put forth evidence supporting their respective positions. *Id.* Ultimately, the Department will make a final determination as to the proper prevailing wage rate. *Id.* The objector may seek judicial review of that final determination under the Administrative Review Law. *Id.*

¶ 13       When the Department posted the website notice on July 15, 2016, that it was indefinitely continuing the previous year's prevailing wage rates until further notice, Shempf's labor union

---

[1]In our original opinion, we stated that, at the time of the dispute here, section 9 mandated "no specific calendar date" for the Department's publication of the county-by-county prevailing wage rates, and that it was not until a legislative amendment to section 9 in 2017 that a specific calendar date was mandated. See Pub. Act 100-2, § 5 (eff. June 16, 2017) (amending 820 ILCS 130/9). When we wrote that passage, we were only discussing section 9's operations in general terms; that is, the issue of a specific date for the Department's posting of county-by-county wage rates had not been briefed, it was not before us as a discrete issue on appeal, and it was unnecessary to the resolution of this appeal. We did not realize, until we received Shempf's petition for rehearing, that we had inadvertently waded into hotly contested waters. So upon denial of rehearing, we have modified our language to delete any discussion of whether section 9, at the time of this dispute, mandated that the Department post these county-by-county prevailing wage rates by a date certain each year. We emphasize that we are expressing no opinion on that question.

filed an objection under section 9 of the Prevailing Wage Act and requested a hearing. The Department responded that it had not yet posted 2016 prevailing wage rates, so an objection and request for hearing was premature.

¶ 14 Within a month, Shempf filed this lawsuit, seeking both administrative review of the Department's denial of an administrative hearing and a writ of mandamus to compel the Department to post updated 2016 rates.[2]

¶ 15 In February 2017, the court severed the mandamus claim from the administrative-review count and set the mandamus claim for expedited review. On May 19, 2017, the court granted summary judgment to Shempf on his mandamus claim and entered an order mandating that the Department "shall publish 2016 prevailing wage rates on its website by 5 PM on May 29, 2017." The court also included in this order a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay enforcement of, or appeal from, that order.

¶ 16 Three days later, by agreement of the parties, the trial court amended that order to correct a scrivener's error and reflect the intended date of May *26*, 2017, for the publication of those rates.[3]

¶ 17 On May 26, 2017, the Department posted the 2016 prevailing wage rates on its website. But the posting stated that these updated prevailing wage rates would apply only to "*work performed on or after June 5, 2017*." (Emphasis added.)

¶ 18 Shempf objected to the strictly prospective effective date. On June 20, 2017—more than 30 days after the May 19 mandamus order—he filed a motion styled a "Request for Clarification or Rule to Show Cause." He argued, in essence, that the Department violated the mandamus order by giving the newly published rates prospective application only. (In a later filing, Shempf requested costs and fees pursuant to section 14-105 of the Code of Civil Procedure, part of the mandamus statute. See 735 ILCS 5/14-105 (West 2016).)

¶ 19 The Department filed a written response to the motion for clarification or rule to show cause, arguing that the Department complied with the court's order and that, in any event, the circuit court lacked jurisdiction to consider Shempf's motion. Among other things, the Department argued that the motion was untimely, having not been filed within 30 days of the court's mandamus order, with its Rule 304(a) language.

¶ 20 The trial court denied Shempf's motion in its entirety. The court stated its agreement with the Department that it lacked jurisdiction, as the motion was filed more than 30 days after the entry of the mandamus order:

---

[2]After Shempf filed his complaint, three additional unions and representative members—Robert Parilli and the International Brotherhood of Electrical Workers Local 134, Martin Flanagan and the Construction and General Laborers' District Council of Chicago and Vicinity, and Stanley Simrayh and the International Union of Operating Engineers, Local 150, AFL-CIO—filed nearly identical lawsuits against the Department and Hugo Chaviano. Those cases were then consolidated with Shempf's case, but before Shempf's case was resolved in its entirety, the plaintiffs in those suits voluntarily dismissed their cases.

[3]Neither party has claimed that this agreed amendment, which was entered three days after the original mandamus order, had any effect on any time deadlines that are relevant to this case. The parties do not dispute that the operative date in considering the trial court's mandamus order was the original date of that order—May 19, 2017.

"Well, here is the problem, okay? I don't have jurisdiction. 30 days is done. It's out the door. So I'm denying your motion. There's nothing I can do. So now the new law is in effect, we'll see what happens with the—you know, see what tricks they can pull on that one."

¶ 21    In September 2017, Shempf filed a motion for summary judgment on its administrative review claim. The motion also contained a requested for reasonable expenses and attorney fees pursuant to section 10-55(c) of the Illinois Administrative Procedure Act. See 5 ILCS 100/10-55(c) (West 2016). In response, the Department argued both that the administrative-review claim was moot—as the Department had now published the new rates—and that the court lacked subject-matter jurisdiction over that claim because the Department's refusal to hold a hearing was not a final administrative decision subject to administrative review.

¶ 22    The circuit court denied Shempf's motion for summary judgment and dismissed the administrative-review count. The court agreed with the Department that its denial of a hearing did not constitute a final administrative decision:

> THE COURT: Well, now we're talking about the narrow focus of the administrative review count, their complaint for administrative review, and that is, it was their decision—or it was their action in posting on the Internet saying basically stay tuned, the jury is still out, we don't have the rates but they're coming. Whether that's a final administrative decision, okay, right?
>
> * * *
>
> In my judgment, it is not a final administrative decision and, therefore, the complaint for administrative review is denied and dismissed ***."

¶ 23    This timely appeal followed.

¶ 24                                ANALYSIS

¶ 25    Shempf raises two arguments on appeal. First, the court erred by finding that it lacked jurisdiction to consider his motion for clarification or rule to show cause regarding the court's mandamus order. Second, the court erred by dismissing his claim for administrative review.

¶ 26                                   I

¶ 27    We begin with the denial of Shempf's motion for clarification or rule to show cause. And we start with basic principles.

¶ 28    First, the order granting summary judgment to Shempf, and entering a writ of mandamus against the Department, was a final judgment. It disposed of the rights of the parties in their entirety as to the mandamus count. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 25 (final judgment is one that disposes of rights of parties either "upon the entire controversy or upon some definite and separate part thereof").[4]

¶ 29    That left, of course, the administrative-review count still pending in the trial court. Normally, when, as here, a final judgment does not dispose of the case in its entirety, that order

---

[4]Shempf does suggest that the judgment on the mandamus count was not "final" in that he requested fees and costs in that count and that request had not yet been resolved. But that count said nothing about fees or costs. The mandamus ruling was clearly a final judgment.

may be revisited by the trial court at any time before the entry of a judgment that disposes of the case as to all claims and all parties. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties"). A court could, for example, reconsider an earlier final judgment and vacate or modify it. See *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 25; *Stevens v. Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 37.

¶ 30    But the trial court's order included language under Rule 304(a), indicating that there was no just reason to delay enforcement of or appeal from its order. With the inclusion of that language, the judgment on the mandamus count became not only final but final, enforceable, and appealable. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Appealable, meaning either party had 30 days to appeal that final judgment or forfeit appellate review. See *id.* (incorporating time limit for filing notice of appeal in Illinois Supreme Court Rule 303(a) (eff. Jan. 1, 2015)); *Tuna v. Airbus, S.A.S.*, 2017 IL App (1st) 153645, ¶ 26. And enforceable, meaning if a party wanted to file a postjudgment motion directed against that final judgment, it was required to do so within 30 days. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) (incorporating tolling provisions for filing of postjudgment motions in Illinois Supreme Court Rule 303(a) (eff. Jan. 1, 2015)); 735 ILCS 5/2-1203 (West 2016) (30-day deadline for postjudgment motions directed against judgment); *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶¶ 51, 53 (Rule 304(a) finding accompanying final judgment did not divest trial court of jurisdiction to vacate or modify judgment within 30 days of judgment, as long as no notice of appeal had been filed in interim).

¶ 31    But once 30 days had elapsed from the entry of the court's mandamus order, with its Rule 304(a) language, the trial court's final judgment was carved in stone. Neither party had the right to appeal that order, nor would a postjudgment motion be timely. There was no longer any occasion to challenge that ruling via a motion to reconsider, vacate, or modify.

¶ 32    Separate and apart from motions to vacate or modify final judgments are motions to *enforce* those judgments. Courts typically enforce orders by way of contempt proceedings. *Computer Teaching Corp. v. Courseware Applications, Inc.*, 191 Ill. App. 3d 203, 206 (1989). And a petition for a rule to show cause is the very method by which a party seeks enforcement of a court order, by bringing to the court's attention the opposing party's alleged violation of that order. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 508 (1993).

¶ 33    Unlike motions to vacate or modify a final judgment, a motion to enforce a final judgment is not limited by a 30-day postjudgment period. The court has "inherent authority" to enforce its judgments, regardless of how much time has passed since the entry of judgment. *County of Cook v. Illinois Fraternal Order of Police Labor Council*, 358 Ill. App. 3d 667, 671-72 (2005); see also *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412-13 (2003) (trial court "retains indefinite jurisdiction to enforce" its judgments). Indeed, "[a]s long as the trial court has jurisdiction over the parties and subject matter, the trial court has jurisdiction to enter an order of contempt." *Computer Teaching Corp.*, 191 Ill. App. 3d at 206.

¶ 34    There is no dispute about any of these principles here. The parties agree that Shempf's motion for clarification or rule to show cause was filed more than 30 days after entry of the writ of mandamus and summary judgment in Shempf's favor, they agree that a motion to modify would be untimely in this instance, and they agree that motions to enforce are not governed by

a deadline. The dispute here is simply over the substance of the motion Shempf filed. The Department says the motion for clarification or rule to show cause was an attempt to modify the writ and was thus untimely. Shempf argues that his motion was a motion to *enforce* the writ and thus was not constrained by a 30-day window.

¶ 35    It is not entirely clear what Shempf meant by asking for "clarification." We say that because, while the title and introductory sentence mentioned a request for "clarification," the body of the (rather short) motion did not elaborate on this point whatsoever. It merely argued that the Department's application of a prospective effective date violated the letter and spirit of the court's mandamus order. Then, in its conclusion sentence—the "wherefore" clause—Shempf prayed for "clarification of the posting effective date." But clarification by whom? The Department? Or the court?

¶ 36    Shempf says that he was seeking an order that the *Department* clarify, in its posting, that the dates were retroactive. It would be a better reading of the motion, however, to conclude that Shempf was asking the *court* to clarify that the posted wage rates should be retroactive in application. But because the original mandamus order did not say that, asking the court to "clarify" that point would be asking the trial court to *modify* its original mandamus order to that level of specificity. See *Burnidge Corp. v. Stelford*, 309 Ill. App. 3d 576, 579 (2000) (motion to "clarify" was, in substance, motion to reconsider and modify judgment order). It would be a request for modification that had to be made within 30 days of entry of judgment. *Id.* Thus, to the extent that the motion could be so interpreted, it was untimely and properly denied.

¶ 37    But it ultimately makes no difference what Shempf meant by his reference to "clarification" because, in any event, there is no question that Shempf was *also* seeking enforcement of the court's order by way of a rule to show cause. The motion was styled in the alternative, a "Request for Clarification or Rule to Show Cause," as was the prayer for relief. In the introductory sentence of the motion, Shempf wrote that, in addition to "clarification," he was seeking a "Rule to Show Cause why Defendants Illinois Department of Labor should not be held in contempt of court for failure to follow the order of this Court."

¶ 38    And the substance of Shempf's motion likewise indicated that at least one of the things he was seeking was a rule to show cause to enforce the court's order. For example, the motion claimed that the Department flouted the trial court's order by giving the prevailing wage rate prospective application only, despite the fact that it was "clear that the court expected [the Department] to post the 2016 prevailing wage *** without equivocation, knowing that it could be retroactively applied in order to protect workers' rights as intended by the Act." Shempf wrote that, "while [the Department] partially followed the Court's order," it "exceeded [its] authority and the clear intent of this court" by giving prospective application only to the prevailing wage rates." This prospective effective date, Shempf argued, "thwart[ed] the intent of this Court's mandamus."

¶ 39    Whether he was correct in his interpretation of the court's mandamus order is beside the point. This portion of his motion clearly indicated that the Department had violated the trial court's order to the extent it made the wage rates prospective only, and Shempf was seeking a rule to show cause why the Department should not be held in contempt for that violation.

¶ 40    This portion of Shempf's motion could only be viewed as a motion to enforce the trial court's ruling. Its inclusion alongside an improper motion for modification does not change that fact. Had Shempf filed two motions simultaneously—one for modification and one for a rule to show cause—there would be no question that the former would be time-barred and the

- 7 -

latter timely. The fact that the two requests were cobbled together in one motion is simply a matter of form, not substance. See *Five Mile Capital Westin North Shore SPE, LLC v. Berkadia Commercial Mortgage, LLC*, 2012 IL App (1st) 122812, ¶ 15 (court will focus on substance, not form, of motion); *Shutkas Electric, Inc. v. Ford Motor Co.*, 366 Ill. App. 3d 76, 81 (2006) (same). Thus, to the extent that the motion sought enforcement of the trial court's order via a rule to show cause, it was not untimely and should have been considered.

¶ 41     We express no opinion on Shempf's reading of the trial court's mandamus order. Our decision is unrelated to the merits of his motion. The trial court, in the first instance, is in the best position to interpret its mandamus order, determine whether the Department violated it, and decide whether a contempt finding is appropriate. We simply hold that the trial court had jurisdiction to consider the portion of Shempf's motion that sought a rule to show cause and only that portion of the motion. We thus vacate the trial court's ruling and remand for consideration of that portion of Shempf's motion only.

¶ 42                                              II

¶ 43     Next, we consider Shempf's appeal of the circuit court's order dismissing his claim for administrative review, which sought judicial review of the Department's "decision" to deny Shempf's request for a hearing pursuant to section 9 of the Prevailing Wage Act.

¶ 44     The Prevailing Wage Act adopts the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)). See 820 ILCS 130/9 (West 2016). The Administrative Review Law applies to "administrative decisions," which are defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2016). "Such determinations contemplate an adversarial proceeding involving the parties, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder." *O'Rourke v. Access Health, Inc.*, 282 Ill. App. 3d 394, 401 (1996). If there is no final administrative decision to review, the circuit court lacks subject-matter jurisdiction. *Id.*

¶ 45     To briefly reiterate, section 9 of the Prevailing Wage Act contemplates that the Department will publish a prevailing wage rate, after which time affected individuals may object and demand a public hearing. 820 ILCS 130/9 (West 2016). At that hearing, the Department and any affected individuals will introduce evidence in support of their respective positions. *Id.* The Department then rules on the written objection and makes "such final determination" that it believes warranted, promptly files a certified copy of that "final determination," and serves it on all parties to the hearing. *Id.* This "final determination" must be rendered within 30 days of the hearing. *Id.* This "final determination" shall be final and binding, unless an aggrieved individual challenges it in court pursuant to the Administrative Review Law. *Id.*

¶ 46     The final administrative decision contemplated here, then, is the determination of the proper prevailing wage rate, after publication, a hearing, and a posthearing determination. But when Shempf sought administrative review, the Department had not published new prevailing wage rates. His complaint was that, after he objected to the Department's failure to do so, the Department had refused to hold a hearing under section 9—an action that would begin the hearing process that would ultimately *lead* to a final administrative decision.

¶ 47     The denial of a hearing was not, itself, a final administrative decision. The Department's refusal to hold a hearing did not fix the rights of the parties or terminate the proceedings before

the Department. The proceedings had not yet even begun, as the Department had not published the initial wage rates, much less entertained any objections to them via a hearing process. It was not an "administrative decision" as contemplated by the Administrative Review Law.

¶ 48　　Shempf was obviously frustrated by what he viewed as the Department dragging its feet in publishing prevailing wage rates. A suit for mandamus, seeking to compel the Department to take that first step, was a viable option that he successfully employed. But a claim for administrative review was not. There was no final administrative decision for the trial court to review, and the court thus properly determined that it had no subject-matter jurisdiction to consider that claim. We affirm that ruling.

¶ 49　　　　　　　　　　　　　　　　　　　III

¶ 50　　Finally, we consider Shempf's request for damages, attorney fees, and costs. To the extent that Shempf seeks fees or costs pursuant to the administrative-review count, any such claim is moot, as the administrative-review count was properly dismissed for lack of jurisdiction.

¶ 51　　But Shempf also claims entitlement to damages, fees, and costs as to the mandamus count. Section 14-105 of the Code of Civil Procedure, the mandamus statute, provides that: "If judgment is entered in favor of the plaintiff, the plaintiff shall recover damages and costs." 735 ILCS 5/14-105 (West 2016). Section 10-55 of the Administrative Procedure Act allows for attorney fees in any action where an "administrative rule" is "invalidated." 5 ILCS 100/10-55(c) (West 2016). At various points throughout his opening and reply brief, Shempf has relied on both statutes as bases for damages, fees, and costs. The State raises several reasons why these remedies were properly denied by the trial court.

¶ 52　　　　　　　　　　　　　　　　　　　A

¶ 53　　The Department raises the bar of sovereign immunity, which generally prohibits suits against the State. See Ill. Const. 1970, art. XIII, § 4 (abolishing sovereign immunity but allowing General Assembly to impose it by law); 745 ILCS 5/1 (West 2016) (generally providing that suits against the State are barred). Suits compelling directors of a state agency to take an affirmative action they are required to take is not barred by sovereign immunity because directors are presumed and expected to follow the law and the constitution, and a suit requiring them to do so is not considered a suit against the "State." *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 189 (1984); *City of Springfield v. Allphin*, 74 Ill. 2d 117, 124 (1978). That, presumably, is why the Department is not raising sovereign immunity against the mandamus count itself, which merely sought to order the Department's director to do something he was required by law to do—publish the prevailing wage rates for 2016.

¶ 54　　But seeking monetary relief against a state agency is a different matter altogether. Claims for money damages against the State are generally barred unless the State has consented to them—unless by law, sovereign immunity has been waived. That waiver will not be lightly assumed; it must be "clear and unequivocal." (Internal quotation marks omitted.) *In re Special Education of Walker*, 131 Ill. 2d 300, 303 (1989). The waiver must be expressed "in affirmative statutory language." *Id.* at 304.

¶ 55　　Statutes that generally allow for fees or costs to prevailing parties, but do not expressly refer to the State, do not waive sovereign immunity. *Id.* Even a statute requiring a "governmental entity" to pay postjudgment interest was not deemed a waiver of sovereign

immunity; even though the State obviously qualifies as a "governmental entity," the State was not expressly identified in the statute. *Id.*

¶ 56    As to Shempf's claim that he is entitled to "damages," as we noted earlier, the mandamus statute itself provides that "[i]f judgment is entered in favor of the plaintiff, the plaintiff shall recover damages and costs." 735 ILCS 5/14-105 (West 2016). But it does not expressly provide for recovery against the *State*. So it is not a waiver of sovereign immunity.

¶ 57    And in any event, we have held that statute to be procedural in nature, allowing for damages only if independently authorized elsewhere by law. *Beaver Glass & Mirror Co. v. Board of Education of Rockford School District No. 205*, 59 Ill. App. 3d 880, 884-85 (1978). Shempf can point to no such independent authority, no statute that independently provides for damages against the State in this context.

¶ 58    Certainly not the Prevailing Wage Act. That act says nothing about obtaining monetary relief against the Department. It allows employees to seek wage-loss damages against *contractors* who do not pay them a prevailing wage. See 820 ILCS 130/11 (West 2016). But nothing in the Prevailing Wage Act permits damages against the Department, itself.

¶ 59    We do not mean to suggest that the payment of money can never be a part of a mandamus action. Sometimes, the duty a mandamus claim seeks to impose on an agency director is, itself, a duty involving the payment of money. For example, a state agency pays a Medicaid provider, pursuant to a state Medicaid plan and contract, for its services. If the Medicaid provider believes that the agency is paying the wrong reimbursement rate under the State plan, it may seek mandamus to compel the state agency director to pay the proper rate. Sovereign immunity would pose no bar. But that is because the focus remains on compelling the director, from that moment forward, to perform a clear legal duty, one that just happens to involve the payment of money. See *Senn Park*, 104 Ill. 2d at 189.

¶ 60    But that is not our case. For one thing, unlike the state agency in *Senn Park*, the Department does not pay anyone a prevailing wage. It has no contracts with laborers. It merely decides what that wage is and publishes it. That duty has nothing to do with the direct payment of money. Units of local government pay the wages, based on those rates. And the Prevailing Wage Act, as we have just noted, permits suits against *those* public bodies for underpayment of wages. 820 ILCS 130/11 (West 2016). And second, Shempf is seeking past damages—wages lost by laborers in 2016 because the Department did not post the 2016 rates in a timely manner. Seeking past damages caused by an agency's failure to act is categorically different than compelling the agency director, going forward, to take an action he or she is required to take. The former is barred by sovereign immunity; the latter is not.

¶ 61    So any claim for "damages" against the Department is barred by sovereign immunity.

¶ 62    What is true for damages against the State is likewise true for claims for costs against the State. To repeat, "[s]tatutes which in general terms authorize imposing costs in various actions or proceedings but do not specifically refer to the State are not sufficient authority to hold the State liable for costs. The State's consent to the imposition of costs against it must appear in affirmative statutory language." *Department of Revenue v. Appellate Court*, 67 Ill. 2d 392, 396 (1977); see also *Walker*, 131 Ill. 2d at 304.

¶ 63    Thus, a statute that generally allowed a prevailing appellee to recover costs of its appeal, without specifically referencing that costs could be recovered against the *State*, did not render the State liable for costs. *Department of Revenue*, 67 Ill. 2d at 398. Likewise, a statute that

awarded fees to prevailing parties in a custody or child-support hearing did not affirmatively reference the State and thus was not a waiver of sovereign immunity that would compel a state agency to bear the costs of suit. *Williams v. Davenport*, 306 Ill. App. 3d 465, 470 (1999). Shempf's claim for costs is barred by sovereign immunity, too.

¶ 64                                                                    B

¶ 65        That leaves Shempf's claim for attorney fees. The general rule in Illinois—modestly styled the "American rule"—is that each party is liable for its own fees and costs. *Village of Glenview v. Zwick*, 356 Ill. App. 3d 630, 636 (2005). That remains true unless a contract between the parties provides for the recovery of fees (not relevant here) or a statute provides for a prevailing party to recover fees. *Id.* (There are rare other exceptions not relevant here.)

¶ 66        The mandamus statute we discussed above does not specifically provide for attorney fees, and we have refused to read that remedy into it. See *Wayne Township Board of Auditors, Du Page County v. Vogel*, 68 Ill. App. 3d 714, 720 (1979) (earlier version of section 14-105 (Ill. Rev. Stat. 1975, ch. 87, ¶ 5) does not provide for award of attorney fees to prevailing plaintiff). Nor, for the reasons previously explained, could section 14-105 be read as a waiver of sovereign immunity in any event.

¶ 67        But Shempf says he's entitled to attorney fees under section 10-55(c) of the Administrative Procedure Act. See 5 ILCS 100/10-55(c) (West 2016). That statute allows for attorney fees if an "administrative rule" is "invalidated by a court." *Id.* That statute does not affirmatively mention the State, either—but then again, only state agencies can promulgate administrative rules (see *id.* §§ 1-20, 1-70), so the fee-shifting provision in section 10-55(c) could not apply to anyone *but* a state actor. There is at least a colorable argument, in other words, that sovereign immunity does not bar attorney fees against the State under section 10-55(c). See *Ackerman v. Department of Public Aid*, 128 Ill. App. 3d 982, 984 (1984).

¶ 68        Still, Shempf has no basis for seeking attorney fees from the Department because no "administrative rule" was "invalidated" by the court's mandamus order. The gist of the mandamus count was that the Department had denied Shempf a hearing on the Department's nonpublication of its prevailing wage rates. The denial of a hearing could not remotely be considered an "administrative rule." And even if we interpreted the publication of prevailing wage rates as a "rule" under the Administrative Procedure Act (see 5 ILCS 100/1-70 (West 2016)), an issue we need not decide, the whole point of the mandamus count was that the Department *had not* published those rates yet. The court ruled that the Department had violated the law by its inaction, and it ordered the Department to take action as required by law, but nothing that the court did could remotely be viewed as invalidating an agency rule. Absent a statutory entitlement to them, Shempf has no basis for seeking attorney fees.

¶ 69        Thus, to the extent that the trial court's dismissal of this matter had the effect of denying Shempf's claim for damages, attorney fees, and costs to Shempf, we find no error and affirm it, even if it was not the basis for the trial court's judgment. See *BDO Seidman, LLP v. Harris*, 379 Ill. App. 3d 918, 923 (2008) (reviewing court may affirm on any basis in record, regardless of whether it was basis for trial court's ruling).

¶ 70                                                            IV

¶ 71         One final note: Everything we have said in section III of our opinion relates to Shempf's ability to recover damages, attorney fees, and costs in the context of Shempf having prevailed on the mandamus count. We have held that he has no right to seek damages, fees, or costs against the State arising from his victory on the mandamus count.

¶ 72         But earlier, we ordered a remand for the limited purpose of hearing Shempf's motion for a rule to show cause. That is a *postjudgment enforcement* motion that could, theoretically, invoke the trial court's contempt powers. And those enforcement powers, of course, could include the imposition of sanctions, fees, and costs, among other remedies.

¶ 73         We have no idea how the trial court will rule on this enforcement motion, and we express no opinion on how it should rule, but we recognize the possibility that the court may find the Department in contempt for publishing wage rates with a prospective effective date. If so, the court would ordinarily have at its disposal any number of remedies, including the imposition of money sanctions, attorney fees, and costs. Whether sovereign immunity would bar such remedies *in the context of a postjudgment enforcement order* has not been briefed, and it would be premature for us to decide that question without a foundational predicate.

¶ 74         And in the event things reached that stage on remand, and the court in some way took issue with how the Department posted its prevailing wage rates, Shempf might have an argument that the court's order would be the equivalent of the court "invalidating" an "administrative rule" of the Department, thus giving him the right to seek fees and costs under section 10-55(c) of the Administrative Procedure Act (5 ILCS 100/10-55(c) (West 2016)). Without having any idea how the trial court might rule, it would be premature for us to weigh in on that question, as well.

¶ 75         We merely emphasize that none of our discussion in section III above should be read as resolving these questions in the context of an enforcement motion invoking the court's contempt powers. If it gets to that point in the trial court on remand, nothing we have said will prevent the parties from litigating questions such as sovereign immunity, the applicability of section 10-55(c), or any other arguments it may raise.

¶ 76                                                       CONCLUSION

¶ 77         We vacate the judgment denying Shempf's motion for clarification or rule to show cause insofar as the court found that it lacked jurisdiction to hear Shempf's motion for a rule to show cause. We remand for the limited purpose of allowing Shempf to present the motion for a rule to show cause. We otherwise affirm that judgment, including the denial of damages, attorney fees, and costs. We likewise affirm the judgment dismissing the administrative-review claim.

¶ 78         Affirmed in part, vacated in part, and remanded with directions.