2023 IL App (1st) 220990

SIXTH DIVISION
August 25, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-22-0990

| | | |
|---|---|---|
| TERRENCE LAVERY; ILLINOIS PROFESSIONALS HEALTH PROGRAM, LLC; and ANIL RAMACHANDRAN, | ) ) ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 2020-CH-01202 |
| THE DEPARTMENT OF FINANCIAL AND | ) | |
| PROFESSIONAL REGULATION, | ) | |
| | ) | Honorable |
| Defendant-Appellant | ) | Caroline Kate Moreland, |
| | ) | Judge Presiding. |
| (Terrence Lavery and Illinois Professionals Health | ) | |
| Program LLC, Plaintiffs-Appellees). | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    The circuit court in this case concluded that the Department of Financial and Professional
Regulation (Department) wrongfully required Mr. Lavery, a therapist called as a witness in
proceedings for the reinstatement of his patient's medical license, to produce personal notes
protected as confidential work product under the Mental Health and Developmental Disabilities
Confidentiality Act (Confidentiality Act or Act) (740 ILCS 110/1 *et seq.* (West 2020)). The court
entered an award of attorney fees and costs, as provided for in the Act, in favor of Mr. Lavery and

his employer, Illinois Professionals Health Program, LLC (IPHP) (collectively, plaintiffs) as the prevailing parties in an action to redress a violation of the Act, and against the Department.

¶ 2    The Department does not challenge on appeal the court's findings that Mr. Lavery was a therapist as defined by the Act, that the documents in question were personal notes protected from disclosure, that the Department violated the Act by insisting on the production of those notes, or that the amount of fees and costs claimed was reasonable. Its sole contention, which it did not argue below and is making for the first time as the basis for this appeal, is that the circuit court lacked subject matter jurisdiction to enter an award of fees and costs against the Department because of the protection that sovereign immunity affords the State of Illinois.

¶ 3    Plaintiffs maintain that sovereign immunity does not apply to this fee award because (1) an exception to the doctrine applies where the primary relief sought is to enjoin a state actor from engaging in prohibited conduct and this award is ancillary to such injunctive relief, and (2) sovereign immunity only applies to claims made against the State and this order for fees and costs grew out of an administrative proceeding initiated by the Department itself, not plaintiffs. Plaintiffs' third argument is that, even if sovereign immunity would otherwise apply, there is clear language in the Confidentiality Act waiving sovereign immunity for violations of the Act by the State.

¶ 4    For the following reasons, we agree with plaintiffs that sovereign immunity does not apply here, based on the fact that the fees and costs are ancillary to injunctive relief, and do not reach the two other arguments that plaintiffs make. We affirm the circuit court's award of fees and costs.

¶ 5                              I. BACKGROUND

¶ 6          A. The Mental Health and Developmental Disabilities Confidentiality Act

¶ 7    This case grows out of Mr. Lavery's assertion of the therapist's work-product privilege to

withhold personal notes he took during his treatment of Dr. Anil Ramachandran in proceedings before the Department in which Dr. Ramachandran sought reinstatement of his medical license. Under the Act, a therapist—defined in part as "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or developmental disabilities services" (*id.* § 2)—is not required to but may keep personal notes regarding the recipient of such services (*id.* § 3(b)). Personal notes include:

> "(i) information disclosed to the therapist in confidence by other persons on condition that such information would never be disclosed to the recipient or other persons;

> (ii) information disclosed to the therapist by the recipient which would be injurious to the recipient's relationships to other persons, and

> (iii) the therapist's speculations, impressions, hunches, and reminders." *Id.* § 2.

¶ 8    A therapist's personal notes will not be considered "confidential communications" or "records" of mental health or developmental disability services—which are separately defined and for which the *recipient* of such services may waive privilege. *Id.* §§ 2, 4, 5(a). To qualify as therapist's notes, they must be "kept in the therapist's sole possession for his [or her] own personal use" and "not disclosed to any other person, except the therapist's supervisor, consulting therapist or attorney." *Id.* § 2. Section 3(b) of the Act provides that such notes "are the work product and personal property of the therapist" and "shall not be subject to discovery in any judicial, administrative or legislative proceeding." *Id.* § 3(b). Section 15 further provides that "[a]ny person aggrieved by a violation of th[e] Act may sue for damages, an injunction, or other appropriate relief" and that "[r]easonable attorney's fees and costs may be awarded to [a] successful plaintiff in any action under th[e] Act." *Id.* § 15.

3

¶ 9                              B. The Department's Licensing Proceedings

¶ 10    The Department initiated licensing proceedings against Dr. Ramachandran in 2014, and in 2015 it suspended his medical and controlled substances licenses pursuant to a consent order. When Dr. Ramachandran petitioned in 2018 to have his licenses restored, he called as a witness Mr. Lavery, the case manager who, for over four years, had been responsible for monitoring his compliance with a substance and alcohol abuse recovery plan.

¶ 11    This case arose out of that administrative action. Mr. Lavery alleged in his complaint that, during his testimony in the licensing proceedings, he disclosed the existence of personal notes kept by him in connection with his provision of mental health services to Dr. Ramachandran. When the Department asked for a copy of the notes, Mr. Lavery explained that they "were not provided because they were 'work product.' " The administrative law judge (ALJ) presiding over the hearing stated in his order that he then reviewed the relevant discovery requests and responses, halted Mr. Lavery's testimony, and ordered that the notes be produced.

¶ 12    Mr. Lavery moved for a protective order, asserting that the documents at issue were protected from discovery under the Act as the personal notes of a therapist. Following briefing and a hearing, the ALJ entered a written order denying the motion. The ALJ agreed that, as a licensed clinical professional counselor, Mr. Lavery qualified as a therapist under the Act. He concluded, however, that Mr. Lavery had failed to meet his burden of establishing that the withheld documents fell within the statutory privilege. Despite the fact that Mr. Lavery had asserted the privilege while testifying under oath and subject to cross-examination, the ALJ faulted him for not "attach[ing] an affidavit concerning the records in question" to his motion. On December 12, 2019, the ALJ denied Mr. Lavery's motion for a protective order and ordered him to produce the withheld notes.

¶ 13    In response to Dr. Ramachandran's argument that the Department lacked jurisdiction to

rule on the applicability of the statutory privilege, the ALJ stated in his order:

"[A]s a general matter, an Administrative Law Judge determines issues of confidentiality and privilege all the time. To the extent that Petitioner [referring to Dr. Ramachandan] argues that, in a specific case implicating the therapist's work product privilege, documents submitted for an *in camera* inspection require review by a judge from a reviewing court, and not an Administrative Law Judge, Petitioner is correct. 740 ILCS 110/10. However, we have not yet reached this stage."

¶ 14    In a handwritten order entered the following month, the matter was continued "[a]waiting [Mr. Lavery's] decision on the production of the documents and/or filing of action in chancery."

¶ 15                              C. The Present Action

¶ 16    In response to that order, Mr. Lavery and IPHP initiated this action in the circuit court on January 29, 2020. They sought a declaration that the withheld documents were protected by the therapist's work product privilege codified in section 3(b) of the Act (*id.* § 3(b)), a protective order stating that Mr. Lavery was not required to produce the documents to the Department, attorney fees and costs pursuant to section 15 of the Act (*id.* § 15), and "such other and further relief that the Court deem[ed] just, including but not limited to, an *in camera* inspection." Plaintiffs also asserted, but later withdrew, a claim for administrative review.

¶ 17    According to the parties' filings in the circuit court, the administrative proceeding on Dr. Ramachandran's petition for the reinstatement of his licenses was stayed pending the court's resolution of plaintiffs' complaint.

¶ 18    The circuit court conducted an *in camera* inspection, ruled that the withheld documents were indeed the protected notes of a therapist, and granted Mr. Lavery's request for a protective order.

¶ 19    Plaintiffs then moved for an award of attorney fees and costs under section 15 of the Act (*id.*). They sought $4079.21 payable to IPHP for payments it had already made to plaintiffs' law firm, and $6560 payable directly to the firm for amounts still outstanding. Plaintiffs supported their motion with contemporaneous time records and an affidavit from their counsel. Following a hearing, the circuit court granted plaintiffs' motion. It concluded that plaintiffs were entitled to fees and costs under the Act and agreed that the uncontested amounts sought were reasonable.

¶ 20    This appeal followed.

¶ 21                                II. JURISDICTION

¶ 22    The circuit court granted plaintiffs' amended motion for attorney fees and costs on June 3, 2022, and the Department filed a timely notice of appeal from that order on July 1, 2022. We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments in civil cases.

¶ 23                                III. ANALYSIS

¶ 24    The Department argues that plaintiffs' request for a statutory award of attorney fees and costs from a state agency is barred by sovereign immunity. Although the Department makes this argument for the first time on appeal, our supreme court has held that sovereign immunity, which implicates the court's subject matter jurisdiction, may be raised at any time. *Currie v. Lao*, 148 Ill. 2d 151, 157 (1992).

¶ 25    Sovereign immunity is a common law doctrine that protects the government from being sued without its consent. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 559 (2005). Its application in Illinois is governed by the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/1 *et seq.* (West 2020)), which revived the doctrine after it was briefly abolished with the adoption of the Illinois Constitution of 1970. See Ill. Const. 1970, art. XIII, § 4; *Parmar v. Madigan*, 2018 IL

122265, ¶ 19. Section 1 of the Immunity Act states that "[e]xcept as provided in *** the Court of Claims Act *** the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2020). Whether the doctrine applies is a question of law we review *de novo*. *Brandon v. Bonell*, 368 Ill. App. 3d 492, 503 (2006).

¶ 26    Plaintiffs argue that sovereign immunity does not apply here because (1) their request for fees and costs was ancillary to injunctive relief intended to prevent the Department from engaging in prohibited conduct and (2) the Department was not "made a defendant" within the meaning of the Immunity Act because this action grew out of administrative proceedings initiated by the Department itself. Plaintiffs argue in the alternative that the only reasonable reading of the statutory text is that the legislature intended to waive sovereign immunity for awards of fees and costs made pursuant to the Confidentiality Act. We agree with the first of these arguments and need not reach the other two.

¶ 27    An exception to the doctrine of sovereign immunity is recognized where a plaintiff alleges that a "[s]tate officer's conduct violates statutory or constitutional law or is in excess of his or her authority." *Parmar*, 2018 IL 122265, ¶ 22. This is often referred to as the "officer suit exception," on the theory that "when the action of a state officer is undertaken without legal authority, such action strips [the] officer of his official status"; his conduct is "not then regarded as the conduct of the State, nor is [an] action against him considered an action against the State." (Internal quotation marks omitted.) *Grey v. Hasbrouck*, 2015 IL App (1st) 130267, ¶ 25. The exception is also referred to as the "prospective injunctive relief exception." *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 876 (2002). This is a moniker we prefer because it captures the essential element of the exception: forward-looking relief. See *Green v. State of Illinois*, 2023 IL App (1st) 220245, ¶ 22 (where we noted that this is "perhaps a more clarifying name"). We have defined the exception

as follows: "Where [a] plaintiff is not attempting to enforce a present claim against the State but rather seeks to enjoin the defendant from taking actions in excess of his delegated authority, and in violation of the plaintiff's protectable legal interests, the suit does not contravene the immunity prohibition." *Grey*, 2015 IL App (1st) 130267, ¶ 25.

¶ 28 The Department offers three reasons that this exception is inapplicable here. It first contends that the fees and costs plaintiffs seek are not part and parcel of the injunctive relief driving this action but constitute a separate monetary judgment for which there must be a specific statutory waiver of sovereign immunity by the State. We begin there.

¶ 29 There have been two different approaches to this question in recent decisions of this court. On the one hand is *Grey*, where this court upheld a statutory award of fees and costs on the basis that it did not "transform" what was otherwise a suit to enjoin improper State conduct into one for damages. *Id.* ¶ 27. The plaintiffs in *Grey* sued under the Illinois Civil Rights Act of 2003 (Civil Rights Act) (740 ILCS 23/1 *et seq.* (West 2010)) for injunctive and declaratory relief aimed at stopping the registrar of vital records from refusing to issue new birth certificates to certain transgender persons. *Grey*, 2015 IL App (1st) 130267, ¶¶ 4, 26. When they had succeeded in enjoining that practice, the plaintiffs then moved, pursuant to the Civil Rights Act's fee-shifting provision, for reimbursement of the fees and costs they had expended to obtain that relief. *Id.* ¶ 4. This court cited *Wilson v. Quinn*, 2013 IL App (5th) 120337, for the proposition that " '[t]he mere fact that a successful action would cause money to be paid from the state treasury does not mean that the action is one against the State.' " *Grey*, 2015 IL App (1st) 130267, ¶ 27 (quoting *Wilson*, 2013 IL App (5th) 120337, ¶ 15). The *Grey* court concluded that the award of fees and costs was ancillary to the injunctive relief the court had granted and thus fell within the prospective injunctive relief exception to sovereign immunity. *Id.* ¶ 28. As the Department points out, that was an

alternative basis for the holding in *Grey*, as the court also found that the statute at issue included a waiver of sovereign immunity.

¶ 30    Coming out on the other side of this question is *Shempf v. Chaviano*, 2019 IL App (1st) 173146, ¶¶ 62-63 (2019), in which this court determined that a fee- or cost-shifting statute must affirmatively reference the State, even in cases, like that one, where the underlying relief was prospective injunctive relief against the State. The plaintiffs in *Shempf* successfully obtained a writ of mandamus ordering the Department of Labor to post prevailing wage rates on its website and sought an award of damages and fees and costs under the mandamus statute. *Id.* ¶¶ 1-2, 51. The *Shempf* court concluded that the mandamus count itself, "which merely sought to order the Department's director to do something he was required by law to do," fell squarely within the prospective injunctive relief exception to sovereign immunity. *Id.* ¶ 53. But monetary relief against the state agency, whether in the form of damages or a statutory award of costs, was, in the court's view, "a different matter altogether." *Id.* ¶ 54. It recited the general rule, stated by our supreme court in *Department of Revenue v. Appellate Court*, 67 Ill. 2d 392 (1977), that " '[s]tatutes which in general terms authorize imposing costs *** but do not specifically refer to the State are not sufficient authority to hold the State liable for costs' " and concluded that rule applied even though in that case, as here, an exception to sovereign immunity authorized the underlying relief the costs were intended to compensate the successful party for pursuing. *Shempf*, 2019 IL App (1st) 173146, ¶¶ 62-63 (quoting *Department of Revenue*, 67 Ill. 2d at 396).

¶ 31    We agree with the *Grey* court that the fees at issue here, where Mr. Lavery was required to initiate a court action in order to enjoin a state officer from obtaining records that were protected by statute, are part and parcel of the injunctive relief that is not barred by sovereign immunity. The ancillary award of fees is necessary to make it practicable for citizens to assert a claim to stop a

state actor from illegal conduct. Here, as in *Wilson*, the "mere fact that a successful action would cause money to be paid from the state treasury" does not mean that sovereign immunity bars the suit. *Wilson*, 2013 Il App (5th) 120337, ¶ 15.

¶ 32    The Department criticizes the *Grey* court's reliance on *Wilson* because it did not involve an award of fees and costs. The plaintiffs in *Wilson* sued to enjoin the nonpayment of a statutorily mandated stipend. *Id.* ¶ 1. The payment of money *was* the injunctive relief sought in that case. We acknowledge this distinction but agree with both of those courts that the "mere fact" that money is being paid out of state funds is not determinative. An award of fees and costs that is ancillary to an action seeking injunctive relief under the prospective injunctive relief exception does not transform the nature of the suit. The underlying relief sought here is plainly injunctive relief under the Confidentiality Act, and the legislature saw fit to make attorney fees and costs available to parties who succeed in actions brought to protect their rights under the Act. We see no reason why plaintiffs should be denied that relief where what they have sought all along is equitable relief not precluded by the doctrine of sovereign immunity.

¶ 33    We note that this has long been a settled question in federal courts. As the United States Supreme Court explained in *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 278 (1989):

> "In *Hutto v. Finney*, the lower courts had awarded attorney's fees against the State of Arkansas, in part pursuant to § 1988 [the fee-shifting provision of the federal Civil Rights Act], in connection with litigation over the conditions of confinement in that State's prisons. The State contended that any such award was subject to the Eleventh Amendment's constraints on actions for damages payable from a State's treasury. We relied, in rejecting that contention, on the distinction drawn in our earlier cases between 'retroactive monetary relief' and 'prospective injunctive relief.' [Citations.] Attorney's

fees, we held, belonged to the latter category, because they constituted reimbursement of 'expenses incurred in litigation seeking only prospective relief,' rather than 'retroactive liability for prelitigation conduct.' [Citations.] We explained: 'Unlike ordinary "retroactive" relief such as damages or restitution, an award of costs does not compensate the plaintiff for the injury that first brought him into court. Instead, the award reimburses him for a portion of the expenses he incurred in seeking prospective relief.' [Citation.]"

"After Hutto," the Court emphasized, "it must be accepted as settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment." *Id.* at 279.

¶ 34    We find this reasoning persuasive. Just as the Immunity Act generally prohibits the State of Illinois from being sued in Illinois courts, the eleventh amendment generally prohibits any state from being sued in federal courts. See *See v. Illinois Gaming Board*, 2020 IL App (1st) 192200, ¶ 4. Like the Immunity Act, the eleventh amendment exempts prospective injunctive relief. *Id.* And as the Supreme Court explained in *Jenkins*, attorney fees expended to obtain injunctive relief are properly characterized as ancillary to that prospective injunctive relief rather than as a separate award of monetary damages. *Jenkins*, 491 U.S.at 278-79.

¶ 35    The Department's argument that an award of litigation expenses should be viewed as an independent form of relief utterly divorced from the injunctive and declaratory relief the fees were expended to obtain is one that our own supreme court has also rejected. In *Illinois Department of Financial & Professional Regulation v. Rodriquez*, 2012 IL 113706, a doctor successfully sued for declaratory relief to have an administrative rule declared invalid. *Id.* ¶¶ 3-4. In a separate action, the doctor petitioned the court for an award of litigation expenses under section 10-55(c) of the Illinois Administrative Procedure Act (5 ILCS 100/10-55(c) (West 2008)), which permits such

awards where an administrative rule has been invalidated. *Rodriquez*, 2012 IL 113706, ¶ 6. Our supreme court held that the request was barred because it had to have been brought as a part of the suit in which the rule was invalidated. *Id.* It explained that the fee request needed to be decided "while the court invalidating the rule maintain[ed] jurisdiction." *Id.* ¶ 18. As our supreme court recognized in *Rodriguez*, a statutory fee award "necessarily arises in" and is a part of the declaratory action itself. *Id.* ¶ 17.

¶ 36 The Department's reliance on *Taylor v. State Universities Retirement System*, 203 Ill. App. 3d 513 (1990), for the proposition that sovereign immunity bars any fee award assessed against a state agency is simply misplaced. The plaintiff in *Taylor* was a lawyer whose efforts on behalf of his client, a recipient of benefits from the State Universities Retirement System (SURS), resulted in compensation for the same disability that SURS had already covered. *Id.* at 516. The lawyer sent SURS a letter informing it of his success and enclosing a check payable to the agency for the amount it was owed, minus his own 20% fee. *Id.* SURS responded that it had a statutory right to reimbursement under the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2020)), which did not provide for a reduction for attorney fees. *Taylor*, 203 Ill. App. 3d at 516. It argued the doctrine of sovereign immunity barred such an award in the circuit court. *Id.* at 524. The lawyer paid the full amount, under protest, and informed SURS he would " 'pursue litigation against [it]' for his fee." *Id.* 516. The lawyer then unsuccessfully challenged the agency's denial of his fee in an action for administrative review, and this court affirmed. *Id.* at 518, 525. We concluded that, under the circumstances of that case, the fees sought would constitute a separate money judgment the lawyer could only pursue in the Court of Claims. *Id.* at 524.

¶ 37 The facts of *Taylor* could not be more different than in this case. *Taylor* did not involve injunctive relief or invocation of the prospective injunctive relief exception to sovereign immunity.

Nor did it involve a fee-shifting provision in a statute. Rather, the attorney in that case sought payment pursuant to the common-fund doctrine, under which an attorney whose services create a fund is, as a matter of fairness, generally allowed compensation from that same fund. *Id.* at 520. Plaintiffs here, by contrast, sought and obtained injunctive relief under a statute providing for such relief and which also provides for an award of attorney fees to a successful plaintiff. Unlike in *Taylor*, a recognized exception to sovereign immunity—the prospective injunctive relief exception—clearly applies here.

¶ 38    The Department next argues that the exception for prospective injunctive relief does not apply because plaintiffs failed to identify in their complaint any individual State officer who acted outside the bounds of the law. Although the ALJ who presided over the licensing proceedings was named in the complaint, plaintiffs acknowledged in their filings below that the ALJ was not a party to this action and is not being sued for violations of the Confidentiality Act. Rather, plaintiffs' claims are against the Department itself, as the party to those proceedings that sought—and persisted in seeking—documents shielded from discovery under the Confidentiality Act.

¶ 39    We rejected the argument that a plaintiff must identify a specific officer who acted illegally in *C.J.*, 331 Ill. App. 3d at 876-77. The plaintiffs there were criminal defendants who had been found not guilty by reason of insanity and were involuntarily committed to a state mental health facility. *Id.* at 873-74. They succeeded in obtaining an order compelling the Illinois Department of Human Services to make individualized determinations regarding whether they qualified for unsupervised on-grounds passes, rather than denying such passes outright as an across-the-board policy. *Id.* at 874-75. The Department of Human Services insisted on appeal that the prospective injunctive relief exception did not apply where the plaintiffs in that case had not sued a specific state official. *Id.* at 876. We disagreed. *Id.* at 877. Although they had sued "an arm of the State"

rather than specific individuals, we reasoned that the action still "sought prospective relief against the illegal actions of state officials" because members of the department's staff would be required to comply with the court's order. *Id.* Here, as in *C.J.*, the relief sought was an order compelling the employees of a state agency to refrain from doing something outside of what the law permits, and the exception applies.

¶ 40 The Department's final argument is that plaintiffs' may not rely on the prospective injunctive relief exception because they have failed to allege that the Department actually violated the Confidentiality Act. At oral argument in this court, counsel for the Department insisted that there could be no violation of the Confidentiality Act where the Department and its staff did not *know* that the withheld documents actually qualified as therapist's notes. Counsel for the Department acknowledged at argument that once the documents were sought and the privilege first raised, the "next procedural step" was an *in camera* inspection to resolve uncertainty regarding whether the statutory privilege applied. In denying Mr. Lavery's protective order, the ALJ had said that an *in camera* inspection required review by a judge from a reviewing court, and "not an Administrative Law Judge." While the Department asserted at oral argument that, of course, the ALJ could have done an *in camera* review, we see nothing in the record indicating the Department sought to disabuse the ALJ of the misunderstanding that such a review had to be done through a separate action in the circuit court.

¶ 41 Plaintiffs' position, also clarified by counsel at oral argument, is that if the Department believed that an *in camera* inspection by the circuit court was necessary, then it should have sought one itself, or at least not opposed plaintiffs' efforts to obtain one from the circuit court. That is precisely what plaintiffs alleged in their complaint, stating in their count for a protective order: "There was no basis for rejecting Mr. Lavery's assertion of the therapist's work product privilege

without the documents being submitted to the Circuit Court for an *in camera* inspection." And that is what the circuit court judge found, stating on the record at the hearing on the fee petition that "[p]laintiffs in this case *were aggrieved* when Lavery's notes were sought without an *in camera* inspection." (Emphasis added). This was conduct by the Department that the circuit court concluded "was in violation of the statutory mandated privilege."

¶ 42    The record reflects that the Department did *not* agree to plaintiffs' request for an *in camera* inspection in the circuit court but instead urged the court to dismiss the case, on the basis that it was an impermissible challenge to an interlocutory discovery order. It criticized plaintiffs in its briefing for seeking relief in the circuit court without first requesting an *in camera* inspection by the Department, even though the ALJ *told plaintiffs in his order* that this was what they were required to do if they wanted to continue to assert the privilege. In sum, the Department knew that the documents might be privileged, resisted plaintiffs' efforts to settle that question, and doggedly persisted in its demand for their production. In our view, this is an arguable basis for a finding that the Department actually violated the Confidentiality Act, which makes quite clear that documents subject to the privilege "*shall not* be subject to discovery." (Emphasis added.) 740 ILCS 110/3(b), 15 (West 2020).

¶ 43    This is not, however, something we need to decide here, because we reject the Department's premise that a past violation of the law must be alleged to invoke the officer suit exception, which we have already noted is more accurately referred to as the prospective injunctive relief exception. By its very definition, the exception contemplates the pursuit of injunctive relief to *prevent* future wrongful conduct from happening. Our supreme court made this clear in *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 48, stating "this court and our appellate court have repeatedly reaffirmed the right of plaintiffs to seek injunctive relief in circuit

15

court to *prevent* unauthorized or unconstitutional conduct by the State, its agencies, boards, departments, commissions and agents or to compel their compliance with legal or constitutional requirements." (Emphasis added.) The plaintiff in *Leetaru* was a graduate student who sued the board of trustees of a state university to enjoin them from proceeding with a disciplinary investigation against him for academic misconduct in a way that did not comply with the university's rules and regulations governing such matters. *Id.* ¶ 1. The court concluded that the student did "not seek redress for some past wrong" but rather "only to prohibit future conduct *** undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority." *Id.* ¶ 51.

¶ 44    The Department insisted at oral argument that a factually similar case, *Flanigan v. Board of Trustees of the University of Illinois at Chicago*, 2018 IL App (1st) 170815, demonstrates that a past violation must be alleged. That is not what *Flanigan* holds. The plaintiff there was a medical student who was dismissed from a state university. *Id.* ¶ 1. Like the graduate student in *Leetaru*, he alleged that the university's board of trustees had violated his due process rights and exceeded their authority by dismissing him without following the school's student disciplinary policy. *Id.* However, none of the factual allegations in *Flanigan* demonstrated that the disciplinary process the defendants followed violated any applicable rule or was in excess of their statutory authority. *Id.* ¶¶ 30-31. To the contrary, the dismissal motion "established that defendants, as State officials, exercised their authority delegated to them by the State." *Id.* ¶ 31. *Flanigan* stands only for the unremarkable proposition that some improper conduct—either past conduct or contemplated future conduct—must be alleged before relief can be awarded.

¶ 45    In sum, we reject each of the Department's three arguments and agree with plaintiffs that the exception to the sovereign immunity doctrine for suits seeking to enjoin state officers from

engaging in conduct exceeding their statutory authority applies here. We concur with the reasoning in *Grey* and the United States Supreme Court's analysis in *Jenkins* that an award of statutory attorney fees and costs is ancillary to that relief and does not constitute a separate monetary judgment against the State. We need not consider plaintiffs' alternative arguments that the doctrine does not apply here because this is an outgrowth of proceedings initiated by the State or that the Act should be read as a waiver of sovereign immunity.

¶ 46                              IV. CONCLUSION

¶ 47    For the above reasons, we affirm the circuit court's award of plaintiffs' reasonable attorney fees and costs under the Act. Plaintiffs request that we award them fees and cost arising from this appeal or remand for the circuit court to do so. Because we believe that the circuit court is better equipped to expeditiously review a fee petition and any objections thereto, we remand for this limited purpose.

¶ 48    Affirmed and remanded.

**Lavery v. Department of Professional Regulation, 2023 IL App (1st) 220900**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-01202, the Hon. Caroline Kate Moreland, Judge presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General; Bridget DiBattista, Assistant Attorney General; and Jane Elinor Notz, Solicitor General, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Rick Schoenfield, of DiVincenzo Schoenfield Stein, of Chicago, for appellee. |